HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LISA STOUT, individually and the marital community composed of Lisa and Ray C. Stout,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIR LINES, INC.,<br><br>Defendant. | NO. CV07-0682 JCC<br><br>PLAINTIFF'S MOTIONS *IN LIMINE*<br><br>Noted for Consideration: Nov. 21, 2008 |

Pursuant to FRE 103, plaintiff moves the Court for a pre-trial determination excluding the following evidence from trial, and prohibiting defendant, its attorneys and its witnesses from making comments or statements in the presence of the jury with regard to such matters as set forth below. The following list is a summary of each matter, which is followed by the argument and authority which corresponds to the itemized letter heading.

    **A. Payments received or to be received in the future from plaintiff's private pilot Loss of License insurance should be excluded because they are a *collateral source* and are not permitted to be used to reduce damages for which defendant is liable.**

    **B. Irrelevant evidence which is advanced by defendant to show that plaintiff was not subjectively offended by the pornography in the flight deck should be excluded, i.e. plaintiff's art work, book cover, art collages, attendance at art courses or exhibits, choice of where to live, or working in a convenience store 30 years ago where pornography was also sold. In addition, defendant should**

PLAINTIFF'S MOTIONS *IN LIMINE* - 1 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

be precluded from presenting evidence or argument that plaintiff was not subjectively offended by the pornography, or that it was not objectively offensive based upon the Court's Order of November 4, 2008.

C. Alleged after-acquired evidence regarding purported failure to disclose two minor counseling visits to an FAA medical examiner 13 years ago should be excluded because it was never disclosed in discovery responses to plaintiff, and is otherwise irrelevant, or its probative value is clearly outweighed by its prejudicial effect.

D. Evidence as to the value of plaintiff's residential property, her husband's income or employment status, his retirement plan, or other financial situation of plaintiff, except for her pilot compensation and future mitigation earnings, should be excluded.

E. Any emails between plaintiff and her friend and former pilot, Anne Denton, if offered into evidence, should be redacted to remove language or comments which are not probative and would be prejudicial.

F. Evidence or claims suggesting that defendant or the airline industry is ailing financially, that a verdict against it would be harmful to the industry or economy in general, or that it could not take acts to remedy the pornography due to the cost should be excluded.

G. Statements or comments as to plaintiff not calling or presenting a witness should be excluded.

H. Witnesses who were not timely and properly disclosed by defendant in its Initial Disclosures, supplements to disclosures, or in answers to interrogatories as to all persons with knowledge should be excluded.

I. Defendant should be precluded from presenting testimony or evidence as to defenses not set forth in its Answer or in response to discovery, including the alleged after-acquired evidence and any "mixed motive" defense.

J. Documents not disclosed or produced by defendant in response to discovery should be excluded.

K. Defendant should be prohibited from suggesting or arguing "lawsuit lottery", "easy street", "windfall", "gold digger" or similar suggestion with regard to plaintiff's damages allowed by law.

L. Defendant and its counsel should be prohibited from suggesting or arguing, or presenting any evidence or testimony to the effect that plaintiff should have applied for a job or jobs which would not comply with the mitigation legal standards under federal or state employment law.

PLAINTIFF'S MOTIONS IN LIMINE - 2 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Case 2:07-cv-00682-JCC   Document 88   Filed 11/06/2008   Page 3 of 18

M. Opinions of defendant's proposed economic expert Daniel Kasper in his principal report, unsupported by qualifications or foundation, and the attempted calculations of economic damages presented in his "rebuttal report" should be excluded.

N. Evidence of plaintiff's childhood events should be excluded as not relevant, or otherwise non-probative and prejudicial.

O. Statements or purported opinions of proposed defense psychological expert, Dr. Gerald Rosen, the bases of which are not included in his written rebuttal report; and any other proposed testimony by Dr. Rosen which is not set forth in his written rebuttal report.

Plaintiff's Motion is based on the files and records herein, and the Declaration of Victoria L. Vreeland attaching documents submitted herewith.

## ARGUMENT AND AUTHORITY

**A.  Evidence of payments, past or future, from plaintiff's private pilot Loss of License insurance should be excluded because they are a collateral source and are not permitted to be used to reduce damages for which defendant is liable.**

Benefits that plaintiff has received or may receive under her privately paid, separate and independent Loss of License insurance are a collateral source and are not admissible to reduce the damages for which the defendant is liable, even when it is for the same injury. Fed. R. Evid. 409; *Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804 (1978); *Stone v. City of Seattle*, 64 Wn.2d 166, 172, 391 P.2d. 179 (1964). It is undisputed that plaintiff personally paid for her private pilot Loss of License insurance. It was not through her employer and is separate, independent insurance. She could have purchased more or less, or none at all. She used her own income for the insurance premiums, and was not compelled by her employer to purchase this private coverage.  The Loss of License insurance is private and separate from the Pilot Disability Income ("PDI") which is provided as a compensation benefit to pilots by the defendant employer.

Under the collateral source rule, the defendant is not entitled to offset damages or present evidence suggesting that plaintiff has received or will receive compensation from a collateral source. *Stone*, Id. "Benefits received by a plaintiff from a source collateral to the

PLAINTIFF'S MOTIONS *IN LIMINE* - 3 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

tortfeasor or contract breacher may not be used to reduce a defendant's liability for damages. This collateral source rule holds true even if the benefits are payable to the plaintiff because of the defendant's actionable conduct". *Goodman v. Boeing Company*, 75 Wn. App. 60, 86, 877 P.2d 703 (1994) *aff'd* 127 Wn.2d 401, 899 P.2d 1265 (1995). "Stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged." *Goodell v. ITT-Federal Support Servs.*, 15 Wn. App. 639, 641, 550 P.2d 1171 (1976) *rev'd on other grounds*, 89 Wn.2d 488, 573 P.2d 1292.

This is also the rule under federal law. The collateral source rule prevents defendant from reducing his or her damages because the plaintiff received insurance benefits from the employee's own independent insurance policy. *Phillips v. Western Co. of North Am.*, 953 F.2d 923, 930 (5th Cir.1992); *Smith v. United States*, 587 F.2d 1013, 1015 (3d Cir.1978). See also, *Kauffman v. Sidereal Corp.*, 695 F.2d 343, 347 (9th Cir. 1982) (unemployment benefits cannot offset a backpay award under Title VII); *Cox v. Spangler* 141 Wn.2d 431, 439, 5 P.3d 1265, 1269 (2000). As noted by the Washington Supreme Court, the collateral source rule applies even if it may arguably result in a "windfall" for the plaintiff, because the alternative is a windfall for the tortfeasor. *Ciminski, Id.* at 806-07 ("As between an injured plaintiff and a defendant, we have no hesitation in saying the former is entitled to prevail.").[1]

**B.    The claim, as well as any evidence advanced by defendant to show that plaintiff was not subjectively offended by the pornography, or that it is not objectively offensive, should be excluded.**

The issue of whether plaintiff was <u>subjectively offended</u> by the pornography and the issue of whether the pornography was <u>objectively offensive</u> appear to have been determined by the Court in its Order denying the cross-motions for summary judgment, thus precluding evidence or argument on these issues. The Order provides at page 10 that "The Court finds

---

[1] The Washington Supreme Court has confirmed that admitting collateral source evidence is a reversible error. See *Johnson v. Weyerhaeuser*, 134 Wn.2d 795, 798, 953 P.2d 800 (1998) (noting that the collateral source rule has been the rule in Washington for 85 years).

PLAINTIFF'S MOTIONS *IN LIMINE* - 4 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

that no genuine issue of material fact exists as to whether the pornography itself is objectively offensive." And, at page 9, the Court stated that the variety of evidence offered by defendant did not "dissuade the Court that Plaintiff subjectively found her workplace to be hostile towards women."

As the Court stated in its Order at page 11: "However, the Court's finding that the pornography is objectively offensive does not necessarily mean a reasonable woman would find that the instances of pornography in the cockpit were pervasive and severe enough to alter the conditions of her employment." Thus, the issue remaining for trial is not whether the pornography was subjectively or objectively offensive, but whether under the reasonable woman standard it was pervasive and severe enough to constitute a hostile work environment, i.e. to alter the conditions of plaintiff's employment.

Consequently, evidence offered by defendant to show that the pornography was not offensive, either subjectively or objectively, is no longer relevant. And, as noted in the Court's Order, even if those issues were still present for trial, such evidence has doubtful relevance, and is wholly unpersuasive. Thus, its inclusion at trial would confuse the jury and waste time, and have little if any probative value. Such evidence, most of which is delineated in defendant's briefing in the summary judgment paperwork and reiterated in the Court's Order, and which plaintiff seeks to exclude is as follows: (1) Evidence that plaintiff worked in a retail store that sold pornographic magazines thirty years ago; (2) Evidence that as an artist, plaintiff has viewed, modeled for, or drawn live nude models; (3) Evidence that plaintiff's novel has a cover of her artwork depicting nudes; (4) Evidence that plaintiff has attended art exhibits or art courses which included images of nude women; (5) Evidence as to the information on the bio flap of her novel; (6) Evidence that plaintiff moved to Jefferson County as indication of not prioritizing her pilot work; and (7) Evidence of plaintiff's art collages regarding work, or any other artwork or evidence from her website, artwork, or fictional writing.

PLAINTIFF'S MOTIONS *IN LIMINE* - 5 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

This evidence is not relevant, and should otherwise be excluded under FRE 401, 402, and 403. To include the evidence would unduly extend the trial, would confuse the jury, could create bias and prejudicial effect, could be improperly used as back-handed character evidence, and would not be probative.

With regard to evidence that plaintiff was subjected to pornography in the cockpits of United aircraft in 1991 - 1993, if otherwise relevant and admitted, the Court should issue a limiting instruction that it is not to be utilized in any way on whether the pornography found in 2004-2005 was not subjectively offensive to plaintiff.

### C.  Alleged after-acquired evidence purportedly showing that plaintiff failed to disclose counseling sessions in 1995 to the medical examiner should be excluded.

Defendant should be precluded from presenting evidence that plaintiff allegedly failed to disclose two counseling sessions she had in 1995 to the FAA medical examiner or that such non-disclosure would have resulted in termination. There are a multitude of independent reasons for this exclusion.

First, defendant failed to timely answer or supplement its answer to Plaintiff's Interrogatory No. 1, which asked defendant to describe in detail each and every act, event or situation which is the basis for the allegations in its Answer where it alleged, on information and belief, that "plaintiff engaged in misconduct during her employment that would have resulted in her earlier termination, had United known of it." Defendant answered that the interrogatory was premature and that it will conduct discovery that may reveal such misconduct.[2] The discovery cut-off was August 1, 2008. However, defendant never supplemented its answer to this interrogatory and never identified the alleged failure to disclose information to the FAA examiner at all. In fact, the first time defendant raised this alleged after-acquired evidence of misconduct was when it filed its motion for summary judgment on September 2, 2008, a month after the discovery cut-off. Consequently, plaintiff

---

[2] See *Declaration of Vreeland*, submitted herewith, **Exhibit A**, Defendant's Answer to Interrogatory No. 1, pages 16-17 of Plaintiff's First Discovery Requests to Defendant and Answers Thereto.

PLAINTIFF'S MOTIONS *IN LIMINE* - 6 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

was never able to conduct any discovery at all on the issue in order to defend against it. Plaintiff was not able to obtain discovery as to any aspect of the defense, the true significance of the nondisclosure to United, how the FAA rule and guideline had been utilized or applied in the past, whether others had been terminated for allegedly failing to disclose two minor counseling sessions without any psychiatric diagnosis or substance use involvement, or to test any of defendant's newly-advanced claims. Consequently, plaintiff would be prejudiced if defendant were permitted to present such evidence. It should be excluded.

Second, the evidence should be excluded because it is not relevant, as questioned by the Court in its Order on the cross-summary judgment motions (Dkt. No. 87 at p. 27), where the Court noted that plaintiff was not discharged by United.[3] Plaintiff has not even yet been so terminated by United on these alleged grounds. But even more important, and as a third basis, the FAA guideline is clear and explicit, and there was no wrongdoing by plaintiff. Only if a pilot is being treated for a diagnosed psychiatric condition or the visits related to some substance abuse is any disclosure by the pilot required. The two visits in 1995 were not for treatment or diagnosis of a psychiatric condition or relating to substance abuse; and thus, no disclosure was required at all.

To permit defendant to present this alleged after-acquired evidence, which is 13 years old with highly questionable applicability to plaintiff, to be brought into this case would be prejudicial. Even if the evidence was relevant, its probative value is outweighed by its prejudicial effect, and it would also waste time and confuse the jury. Moreover, it also

---

[3] Several courts have precluded after acquired evidence through motions *in limine*, noting that the evidence is irrelevant to the underlying liability of the defendant. *See, e.g., Smith v. Normandy Properties*, 2008 WL 4443827 (W.D. Pa. 2008). Only the employer's motivation is paramount in an employment discrimination suit, thus after acquired evidence of employee misconduct is not relevant in determining whether an employer is liable. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 359-60, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (the Supreme Court held that the after-acquired evidence of wrongdoing is not relevant to the liability determination in an ADEA or Title VII case; the employer's wrongful act, and its unlawful implications is the paramount concern).

PLAINTIFF'S MOTIONS *IN LIMINE* - 7 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

appears that this is also an improper, back-handed attempt by defendant to malign plaintiff or bring in improper character evidence, which is precluded by FRE 404(b). Any potential relevance, both for liability or for damages, is entirely outweighed by its prejudicial effect which cannot be cured by a limiting instruction. The Court should exercise its discretion and exclude this evidence, which was not even timely disclosed to plaintiff and about which plaintiff was not permitted to conduct any discovery.

**D.     Evidence as to the value of plaintiff's residential property, her husband's income, his employment status, his retirement plan, or any other financial situation of plaintiff, with the exception of evidence as to her pilot compensation and future mitigation/potential earnings should be excluded.**

The value of plaintiff's residential property, her husband's employment status or benefits, and her financial situation wholly unrelated to her earnings as a pilot or ability to mitigate damages through her earnings should be excluded as irrelevant. Such evidence does not make "any fact that is of *consequence* to the determination of the action more probable or less probable that it would be without the evidence." FRE 401. Admission of such evidence would only be to prejudice the jury, because it has no bearing on the damages allowed to plaintiff under federal or state law. Admission of such evidence in an attempt to limit damages is improper. *See, e.g., Gattegno v. Pricewaterhousecoopers, LLP*, 205 F.R.D. 70 (D. Conn. 2001) (financial information of husband not relevant to employment discrimination action).

Even if of some relevance, it would be prejudicial because of the ability of the jury to misuse it, causing bias and prejudice to plaintiff. FRE 403. The only reason to present such evidence is to suggest that plaintiff is financially taken care of, or does not "need" the compensatory damages to which she is entitled by law. The evidence should be excluded.

///

PLAINTIFF'S MOTIONS *IN LIMINE* - 8 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

**E.     If offered into evidence, any emails between plaintiff and former pilot and friend, Anne Denton, should be redacted to remove prejudicial and non-probative language, including off-color language or swear words.**

Ms. Denton was a pilot, friend of plaintiff and had frequent email communications with her. Ms. Denton will testify about pornography at United, how difficult it was to raise a complaint about it, what could likely happen, the fears of bringing it out into the open, and how the pornography and United's response to plaintiff was harmful and difficult to plaintiff based on Ms. Denton's observations. Defendant will likely attempt to have actual emails introduced into evidence for the sole purpose of trying to embarrass or prejudice plaintiff, due to some colorful language and swear words utilized. The emails include hearsay and other statements or comments that are not relevant, and would not be offered as affirmative evidence by defendant. Rather, they would be offered simply to prejudice plaintiff due to some foul language included in them. Any such emails should be redacted or excluded pursuant to FRE 403, so as not to bias plaintiff. Further, any emails would be cumulative and duplicative of the live testimony of Ms. Denton. Evidence as to the total number of United flights where no pornography was reported is not relevant or material and should be excluded.

**F.     Evidence or comments suggesting that defendant or the airline industry is ailing financially and thus a verdict against it would be harmful to the industry or economy in general, or that United could not undertake reasonable actions to remedy the existence of pornography due to the costs should be excluded.**

The defendant should be precluded from presenting evidence that the economy is tough for the airline industry, or that a verdict would be harmful to the economy or the industry, or would harm United's ability to continue to operate and provide jobs to many employees, or would be unable to satisfy a judgment. Such implications are highly prejudicial. Evidence of United's financial status is pertinent to the issue of punitive damages, and some evidence of defendant's viability as regards to the future potential wages of plaintiff is relevant for limited purposes. However, defendant should not be permitted to make the types of argument or comments sought to be excluded here.

PLAINTIFF'S MOTIONS *IN LIMINE* - 9 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

### G. Statements or comments as to plaintiff not calling or presenting a witness should be excluded.

Plaintiff is not required to call all of her treating physicians. Rather, an expert who has reviewed all the records for purposes of giving opinions can relate information included in those records, thus allowing for a shorter trial. Although plaintiff may call many of her treating providers, it is also possible that she will not. Defendant should be precluded from improperly commenting or arguing that plaintiff's decision not to put on live testimony of a witness implies anything or suggests that witness's testimony would not be supportive.

It is well settled that where witnesses are available to both parties prior to trial, and where either party could have therefore called the witnesses, no inference can arise from the failure of either party to call a witness, especially where such testimony would be cumulative. *Carlos v. Cain*, 4 Wn. App. 475, 485 P.2d 945 (1971); *see also* 29 Am. Jur. 2d Evidence § 180 fn. 13 (1967).

### H. Witnesses who were not timely and properly disclosed by defendant in its Initial Disclosures, supplements to disclosures, or in answers to interrogatories should be excluded.

Defendant has listed proposed witnesses in its draft pre-trial statement who were never disclosed in its Initial Disclosures or any supplements to Initial Disclosures, and who were also never identified at all in response to Plaintiff's Interrogatory No. 2 seeking names of all persons with relevant knowledge and a summary of that knowledge.[4] These proposed non-disclosed witnesses are: John Winter, Katherine Loveland, John Steiner, Ken Turpen, Carl Klinkhammer, Stephen Forte, and Jacci Gooden.

Defendant should be precluded from presenting testimony or other evidence of these undisclosed witnesses, in violation of the Court's amended case schedule, Fed. R. Civ. P. 26(e) and 37. "A party that without substantial justification fails to disclose information

---

[4] See *Declaration of Vreeland*, submitted herewith, **Exhibit B**, Defendant's Answer to Interrogatory No. 2, page 18 of Plaintiff's First Discovery Requests to Defendant and Answers Thereto; and **Exhibit C**, Defendant's Initial Disclosures, pages 1 – 8; Defendant's Supplemental Initial Disclosures, pages 1 – 2.

PLAINTIFF'S MOTIONS *IN LIMINE* - 10 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." *Yeti By Molly, LTD. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106, fn. 1, (9th Cir. 2001) (citing FRCP 37(c)(1)). Late disclosures can be allowed by the court if the tardiness was either substantially justified or if the effect of late disclosure is harmless on the opposing party. *Id.* "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107.

Plaintiff did not have the opportunity to depose these individuals who were not identified by defendant at all and the scope of their knowledge was not disclosed. There is no justification by defendant to have failed to timely answer interrogatories or supplement its Initial Disclosures if it wanted to use these witnesses at trial.

### I. Defendant should be precluded from presenting testimony or evidence as to defenses not set forth in its Answer or in response to discovery.

Defendant has included in its Supplemental Pretrial Statement a brand new affirmative defense, which was never alleged in any Answer or Amended Answer. The first time it was advanced in this case was on November 3, 2008, when defendant served plaintiff with its Supplemental Pretrial Statement. The new, proposed affirmative defense is as follows: "With regard to any adverse employment action on Plaintiff, United would have made the same decision even if the Plaintiff's participation in a protected activity had played no role in the employment decision." [5] In addition to the late proposed defense, it is not even relevant here.

This is an attempted "mixed motive" affirmative defense – applicable for a case of termination, discharge, or adverse employment action (under older case law). However, under the current case law as recognized in the Court's Order denying summary judgment, (Dkt. 87, p. 19), retaliation does not have to rise to the level of a termination, or constructive discharge,

---

[5] See *Declaration of Vreeland* submitted herewith, **Exhibit D**, Defendant's Supplemental Pretrial Statement, pages 1 – 3 only.

PLAINTIFF'S MOTIONS *IN LIMINE* - 11 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

but can be made up of actions short of discharge or adverse employment actions. The standard is whether the alleged retaliatory actions are materially adverse, i.e. that which might dissuade a reasonable worker from making or supporting a charge of discrimination.

And, for causation, the issue is whether the protected activity was a motivating factor. In this case, as set forth in its summary judgment paperwork, defendant acknowledges that it defends the claims by attempting to show a legitimate, non-discriminatory reason for its actions, and the jury makes the determination of pretext on the evidence, including the credibility of the actors. This is also the Court's decision in its Order denying summary judgment. (Dkt. 87, page 23). The newly advanced "mixed motive" defense is not appropriate or applicable here.

Further, the new, affirmative defense now advanced by defendant is too late – defendant never attempted to amend its Answer to include such a defense, and it never advanced it in any way in its summary judgment submissions just these past few months. Plaintiff has conducted extensive discovery in this action in an effort to ascertain the basis or bases for defendant's claim of non-liability. It would be unfair and unduly prejudicial to allow defendant to introduce any new defenses or theories of non-liability or new information which was not provided in response to discovery requests. *See Stark v. Allis-Chalmers*, 2 Wn. App. 399, 467 P.2d 854 (1970); *Hampson v. Ramer*, 47 Wn. App. 806, 816, 137 P.2d 298 (1987).

J. **Documents not disclosed or produced by defendants in response to discovery should be excluded.**

Any document which defendant attempts to admit into evidence and which reasonably falls within the plaintiff's discovery requests, or those which should have been identified and included in Defendant's Initial Disclosures should be excluded. Plaintiff has requested evidence and documents from defendant during discovery, which at times, has been difficult. Defendant should not be permitted to submit documentary evidence which was not provided to plaintiff in response to her discovery requests. Undisclosed evidence should not be

PLAINTIFF'S MOTIONS *IN LIMINE* - 12 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

permitted. *Sather v. Lindahl*, 43 Wn.2d 463, 261 P.2d 682 (1953); *Gebbard v. Niedzquiecki*, 122 N.W.2d 110 (Minn. 1963).

**K.   Defendant should be prohibited from suggesting or arguing "lawsuit lottery", "easy street", "windfall", "gold digger" or similar suggestion with regard to plaintiff's damages allowed by law.**

It has become quite common and fashionable for defendants to argue that the plaintiff is trying to win the "lottery", or unfairly receive a "windfall", or land on "easy street", or is a "gold digger". Clearly, the court will instruct on the measure of damages allowed by law, which is to make plaintiff whole and to compensate for her losses, and to punish and deter the employer from future, unlawful acts. Defendant should be prohibited from arguing that plaintiff's request for compensatory or punitive damages is something other than what is permitted by law as her right. The purpose of employment law is to adequately compensate the employee for her injuries and to admonish and punish the employer for its illegal acts. Any argument to the contrary is unduly prejudicial. Fed. R. Evid. 403.

**L.   Defendant and its counsel should be prohibited from suggesting or arguing, or presenting any evidence or testimony to the effect that plaintiff should have applied for a job or jobs which would not comply with the mitigation legal standards under federal or state employment law.**

The law requires that a plaintiff take reasonable steps to mitigate his or her damages. For employment cases, that includes taking reasonable steps to find alternative employment or develop skills for a new career. Here, the economic expert disclosed by defendant <u>has expressly accepted</u> the opinion of Ms. Cloie Johnson, a qualified and certified vocational rehabilitation counselor, that the best and most reasonable mitigation of plaintiff's loss of her pilot career and future income is retraining through completion of college and engaging in one of several careers, including teaching or writing. Further, it is axiomatic that mitigation does not require that the plaintiff take any entry level job or move her geographic location, or take demeaning or unsuitable jobs given her talents and abilities. *See, Burnside v. Simpson Paper*

PLAINTIFF'S MOTIONS *IN LIMINE* - 13 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

*Co.*, 66 Wn. App. 510, 832 P.l2d 537 (Div. I, 1992); *Goodman v. Boeing*, 127 Wn.2d 401, 899 P.2d 1265 (1995).

However, it appears that defendant will attempt to argue or present evidence that plaintiff should have applied for a variety of entry level, minimum wage positions and should have done so immediately after being medically grounded. This is not relevant under the case law of mitigation, and would be a waste of time and confuse the jury. It should be excluded.

**M.   Opinions of defendant's proposed economic expert Daniel Kasper in his principal report, unsupported by qualifications or foundation, and the attempted calculations of economic damages presented in his "rebuttal report" should be excluded.**

A report of defendant's proposed economic expert Daniel Kasper was disclosed and delivered to plaintiff's counsel by the September deadline for disclosure of expert reports.[6] However, the report was vague, did not have any economic calculations of wage or economic loss or data from which to make the calculations, purported to include vocational opinions without foundation or qualification, and was a general statement of methodology. The purported "opinions" in this report should be excluded as they are not concrete and do not meet the standards required under the federal rules.

Later, defendant served a Rebuttal Report of Mr. Kasper, in October, 2008, by the expert rebuttal deadline, which report then attempted for the first time to make calculations of plaintiff's economic damages and to present a variety of information which should have been in the principal original report, not as a rebuttal report. Plaintiff was therefore not afforded the opportunity to present a rebuttal economic opinion or report to counter the calculations or opinions of Mr. Kasper which were actually required to be presented at the outset in the expert's principal report.

Plaintiff has not yet had the opportunity to depose Mr. Kasper, who works and resides in Massachusetts, and defendant is not willing to make him available in Washington for

---

[6] See *Declaration of Vreeland* submitted herewith, **Exhibit E**, Statement of Daniel Kasper, without attachments.

PLAINTIFF'S MOTIONS *IN LIMINE* - 14 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

testimony, but would make him available in Chicago. Consequently, plaintiff requests that the Court permit plaintiff to present her motion *in limine* as to Mr. Kasper's opinions at the time of trial prior to his being offered as a witness by defendant.

### N. Evidence of plaintiff's childhood events should be excluded as not relevant, or otherwise non-probative and prejudicial.

It is undisputed that plaintiff was hired by defendant as a pilot in 1990, when she was age 34. It is undisputed that she underwent two separate MMPI psychological evaluations by defendant prior to being hired. She passed those evaluations to defendant's satisfaction after review by two of defendant's medical directors, and she was also qualified and certified by the FAA and met all medical and other governmental requirements. There was no issue of her capacity or ability to have been a fully functioning and competent pilot, and in fact she did so operate. Nothing in her childhood precluded or detracted from that ability or capacity, as acknowledged by defendant through its hiring of and continued employment of plaintiff through the years. Plaintiff remained fully certified by the FAA including medical certifications, up until the horrific events of 9/11, which events included United aircraft at a time when plaintiff was in operations in Denver assigned to pilot a flight. As a result of the 9/11 catastrophe, plaintiff underwent medical treatment and was grounded for a period of time. She was treated, and in July, 2002, she was medically re-certified and approved to return to flying by defendant, the FAA, and her medical providers. She continued flying with no medical or certification issues at all until she reported sick on July 1, 2005.

Defendant will attempt to avoid or reduce its liability for her medical grounding in 2005 by presenting and pointing to evidence (1) that plaintiff was the subject of "childhood sexual abuse" (which was one incident of touching only); (2) that plaintiff's parents had a volatile divorce, she was bounced around, and she was secreted away by her mother for a period of time in her childhood; or (3) that plaintiff was in a short-term marriage which she considered emotionally abusive, or other childhood events. None of these events interfered

PLAINTIFF'S MOTIONS *IN LIMINE* - 15 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

with plaintiff's capability to be a qualified, certified or competent pilot, who was hired by defendant, passed all certifications and qualifications, and performed at a high level of functioning as a pilot from 1990 through the events of 9/11, and then who was treated and re-certified to return to work by the FAA and defendant's medical staff in mid-2002, and who then continued to function fully and capably as a pilot through July, 2005.

The issue here is the causal connection between (a) the hostile work environment (pornography), the retaliatory acts or a combination of the two with (b) plaintiff's diagnosed condition and treatment, which resulted in her mandatory grounding. The events of her childhood should be excluded as they would confuse the jury, not be probative, and are too remote. Those childhood events did not interfere with her ability to be certified, qualified and function fully and capably as a pilot during her adult life, and did not prohibit her actual employment and full functioning as a pilot for defendant. To bring them into evidence would be to defy the actual facts of her flying capacity and qualification. They should be excluded.[7]

**O.    Statements or purported opinions of proposed defense psychological expert, Dr. Gerald Rosen, the bases of which are not included in his written rebuttal report; and any other proposed testimony by Dr. Rosen which is not set forth in his written rebuttal report.**

Defendant moved for a FRCP 35 mental examination by Dr. Rosen in order to provide expert rebuttal testimony to address the "issues of plaintiff's psychological and mental condition, emotional distress, causation, diagnosis and prognosis." (Dkt. 34, pages 3-4). However, Dr. Rosen's Rebuttal Report does not offer any opinion of diagnosis, prognosis, or psychological or mental condition.[8] Rather, without indicating the bases therefore, he simply makes statements of disagreement with several of the opinions of plaintiff's expert, Dr.

---

[7] As of the deadline for filing motions *in limine*, plaintiff has not had the opportunity yet to depose defendant's proposed expert psychological witness, Dr. Gerald Rosen, as to his methodology, evaluation, testing, or assessment, or his assumptions and opinions. Plaintiff requests that the Court permit plaintiff to present her motion *in limine* as to any such aspect of Dr. Rosen's anticipated testimony at a later date after his deposition and prior to defendant offering his testimony, if any, for trial.

[8] See *Declaration of Vreeland*, Exhibit F, Statement of Dr. Rosen, filed separately under seal.

PLAINTIFF'S MOTIONS *IN LIMINE* - 16 of 18
(No. CV07-0682 JCC)
[196347 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Shirley Feldman-Summers. His rebuttal report does not, however, give the detailed bases for his statements. Such is required by the rules for expert witnesses and their reports. Based on his report, it is impossible for the Court to determine its basis, credibility or validity.

Plaintiff should not be required to depose a proposed expert to determine his opinions and the bases for them. The rules require that the expert provide such bases and opinions in a written report. This has not been done by defendant in this case. The report is not adequate.

Plaintiff has not yet had the opportunity to depose Dr. Rosen. Therefore, alternatively, plaintiff requests that the Court permit her to present a motion *in limine* as to Dr. Rosen's proposed testimony after his deposition and prior to defendant offering his testimony, if any, at trial.

DATED this 6th day of November, 2008.

GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP

By _____
Victoria L. Vreeland, WSBA No. 08046
vvreeland@gth-law.com
Attorneys for Plaintiff

[28776-00001]

PLAINTIFF'S MOTIONS *IN LIMINE* - 17 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

# CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on November 6, 2008, I electronically filed the following: (1) PLAINTIFF'S MOTIONS *IN LIMINE*, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tyson K. Harper, WSBA No. 39720
Stellman Keehnel, WSBA No. 9309
DLA PIPER US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044

(206) 839-4800 - telephone
(206) 839-4801 - facsimile
stellman.keehnel@dlapiper.com
Tyson.Harper@dlapiper.com

*Attorneys for Defendant*

DATED this 6th day of November, 2008.

s/Victoria L. Vreeland
Victoria L. Vreeland, WSBA No. 08046
vvreeland@gth-law.com
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
600 University, Suite 2100
Seattle, WA 98101
Tel: (206) 676-7500
Fax: (206) 676-7575

PLAINTIFF'S MOTIONS *IN LIMINE* - 18 of 18
(No. CV07-0682 JCC)
[196347 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575