THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LISA STOUT, individually and the marital community composed of Lisa and Ray C. Stout,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIR LINES, INC.,<br><br>Defendant. | CASE No. CV07-0682 JCC<br><br>**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT JOHN J. NANCE**<br><br>**NOTE FOR MOTION CALENDAR: FRIDAY, NOVEMBER 21, 2008** |

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
TESTIMONY OF JOHN J. NANCE

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

Defendant United Air Lines, Inc. ("UAL") respectfully requests that the Court exclude from use at trial the testimony and report of Plaintiff's proffered expert John J. Nance.

In evaluating the admissibility of a purported expert's opinions under FED. R. EVID. 702, the Court serves a crucial "gatekeeping" function "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). That function requires the Court " to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* Even where an expert's opinions reflect sufficient "intellectual rigor" to be reliable, those opinions must still be relevant, and must still assist the fact-finder, in order to be admissible under Rule 702. Moreover, under FED. R. EVID. 403, if the potential relevancy or probative value of expert testimony is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury, the testimony must be excluded. *See Diede v. Burlington Northern Railway Co.*, 772 F.2d 593, 596 (9th Cir. 1985).

The testimony of Plaintiff's proffered expert, John Nance, violates every principle supporting the admissibility of expert testimony. The most pervasive and unavoidable problem with Mr. Nance's testimony is that he bills himself as an aviation *safety* expert, and the touchstone for all of Mr. Nance's opinions is that UAL's actions compromise the *safety* of UAL aircraft. But this case is not about aviation safety; this case is about whether UAL took adequate measures to prevent Plaintiff from encountering pornographic material in the cockpit. If Mr. Nance is permitted to testify, the specter of planes falling from the sky will taint any assessment by the jury of UAL's efforts to address Plaintiff's concerns. That overwhelming risk of unfair prejudice outweighs any possible probative value of Mr. Nance's testimony.

Even if the prejudice inherent in invoking airline safety issues did not conclusively preclude Mr. Nance's testimony, his opinions also pose a substantial risk of confusing or misleading the jury. Mr. Nance opines that UAL was subject to amorphous, extra-legal duties

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
TESTIMONY OF JOHN J. NANCE – 1

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

of "morality," "public responsibility," and "unusually sensitive empathy." Mr. Nance's personal views regarding UAL's "heightened" obligations, cloaked in the ostensible credibility of expert testimony, will undeniably conflict with and cloud the Court's instructions to the jury regarding the legal standards governing this case. Moreover, Mr. Nance opines on every ultimate legal conclusion the jury will be asked to reach, which exceeds the proper role of an expert witness. Finally, even if the inevitable risks of prejudice and confusion could somehow be ameliorated, Mr. Nance's opinions lack the factual support and reliable methodologies required under Rule 702 to ensure that expert testimony is both credible and competent.

## I. <u>BACKGROUND</u>

Mr. Nance is one of four purported expert witnesses proffered by Plaintiff in this case. On August 27, 2008, Mr. Nance submitted his "Report of Expert Analysis" (the "Nance Report"), which is attached to this Motion as Exhibit A. By his own admission, Mr. Nance does not "routinely seek nor take cases as a legal consultant or expert consultant ...." Nance Report at 2. Mr. Nance is principally an author of aviation-related fiction; he is also an "aviation analyst" for ABC World News and Good Morning America. Unaccustomed as he is to issuing expert reports in legal proceedings, Mr. Nance's Report is fifteen pages (exclusive of appendices) of sprawling, loosely organized opinions and observations, virtually none of which are supported by any specific evidence or citations (as discussed below). On November 3, 2008, Mr. Nance was deposed by UAL's counsel. Relevant excerpts from the transcript of Mr. Nance's deposition (the "Nance Transcript") are attached to this Motion as Exhibit B.

On November 4, 2008, the Court entered an Order denying the parties' cross-motions for summary judgment (the "S.J. Order"). As set forth in the S.J. Order, the remaining issues for the jury in this case are: (1) "whether a reasonable woman would find Plaintiff's workplace sufficiently abusive to constitute a hostile workplace," in light of Plaintiff's intermittent encounters with pornographic material in the cockpit (S.J. Order at 12); (2) whether UAL took adequate remedial measures to correct and prevent the appearance of pornographic material in

the cockpit (S.J. Order at 16-18); and (iii) whether UAL retaliated against Plaintiff, by subjecting her to an adverse employment action as a result of Plaintiff engaging in a protected activity (*i.e.*, complaining about pornography in the cockpit). S.J. Order at 22-23.

## II. AUTHORITY AND ANALYSIS

It is Plaintiff's burden to prove the admissibility of Mr. Nance's purported expert testimony. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). And it is the Court's critical role to "act as 'gatekeeper' to exclude 'junk science' that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Elsayed Mukhtar v. Cal State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002) (citations omitted); *Jones v. King County Metro Transit*, No. C07-319Z, 2008 WL 2705138, *8 (W.D. Wash. July 9, 2008) (Hon. T. Zilly). The Court must also evaluate, under Rule 403, whether the probative value (if any) of Mr. Nance's opinions is substantially outweighed by the risks of unfair prejudice, confusion of the issues, or misleading the jury.

A. **Mr. Nance's Testimony Is Irrelevant And Unfairly Prejudicial.**

Plaintiff has consistently disclosed and described Mr. Nance as an "Aviation and Safety Expert and Consultant," and Mr. Nance himself characterizes his fields of expertise as "air safety and the evolution of human factors in air safety." Nance Transcript at 75:16-17.[1] In the S.J. Order, the Court also identified Mr. Nance as Plaintiff's "expert in Aviation Safety." Order at 21:23. Mr. Nance acknowledges that he is *not* an expert in any aspect of the law (including employment law), is *not* an expert in psychiatry or psychology, and has *no* expertise related to sexual harassment claims or methods for preventing or remediating sexual harassment. *Id.* at 78. Mr. Nance has never previously been involved in any matter involving sexual harassment. *Id.* at 146:15-17. Nor has Mr. Nance ever testified as an expert in any matter involving "distractions" — including the presence of pornography — in the cockpit.

---

[1] Mr. Nance also claims to be an expert in "medical safety" and "piloting," as well as a "professional broadcaster" and an author (having published 19 books, most of which are aviation-related fiction). Nance Transcript at 75-76.

*Id.* at 70:23-71:5. In short, Mr. Nance's only purported expertise that could have any conceivable bearing on this case is his general experience with "aviation safety."

On the first page of his report, under the heading "Purpose," Mr. Nance summarizes his proposed role in this case as follows:

> To provide independent expert opinion concerning the above case with particular reference (but not limited to) the effects of various actions *on aviation safety*, and the standard and desirable operating philosophies imbedded in commercial airline procedures, all based on the revolution in the understanding and incorporation of human factors/human performance considerations in the promotion of *safe airline flight*.

Nance Report at 1 (emphasis added). Although the above summary suggests that Mr. Nance might offer opinions *not* related to safety, his deposition testimony made clear that all of Mr. Nance's opinions are inextricably based upon, and bound up with, safety considerations. The following interchange from Mr. Nance's deposition is particularly revealing:

> Q: What were you asked to provide an expert opinion on in this case?
>
> A: ... [I]t was the elements of this particular case based on what I was given, that – *that impinged on safety, principally; if they did or did not*. And whether or not some of the other actions, since the initial problem with the distraction over the pornography in the cockpit in my view was *clearly an impact on safety*, what was done, was that effective."

Nance Transcript at 100:6-16 (emphasis added). Mr. Nance obviously views the first two remaining jury issues in this case — *i.e.*, whether the pornography Plaintiff encountered created a hostile work environment, and whether UAL adequately responded — through the lens of safety: "Therefore, the presence of sexually explicit materials in 737 cockpits in this case presented a safety issue, and since ANY safety issue must be taken seriously, this was a serious matter – especially if not addressed by the company over time." Nance Report at 7.[2] Mr. Nance also views the final jury issue in this case — *i.e.*, whether UAL retaliated against Plaintiff — as, first and foremost, a safety issue: "The failure to support Captain Stout, and in

---

[2] Notably, Mr. Nance retreated from this position at his deposition, admitting that it would be "acceptable" (*i.e.*, would pose no immediate safety risk) for a captain to choose *not* to remove pornographic material from the cockpit prior to take-off, but to wait and remove it *after* the flight was over. Nance Transcript at 165:20-166:15.

fact the clear move from energetic and correct response to her report to effectively attacking the reporter and questioning her abilities and motivations is a classic example of horizontal hostility, and very, very dangerous to flight safety." Nance Report at 11. In summary, all of Mr. Nance's opinions boil down to, and are indelibly colored by, the conclusion that UAL's actions in this case compromised flight safety and endangered innocent lives.[3]

But this case is *not* about aviation safety. None of the three issues the jury will be called upon to consider at trial, as identified in the Court's S.J. Order, hinges upon or implicates flight safety. The first issue turns on whether a "reasonable woman" would find Plaintiff's workplace circumstances hostile; the second issue turns on whether UAL's remedial actions were reasonably calculated to curb and prevent the appearance of pornography in the cockpit; and the third issue turns on whether UAL subjected Plaintiff to adverse action based on her complaints. Mr. Nance's purported safety concerns have no bearing on any of those inquiries. Nor is there any allegation in this case, let alone any evidence, that the Federal Aviation Administration ("FAA") — the exclusive arbiter of airline safety — was ever contacted, conducted any investigation, or made any safety findings in connection with Plaintiff's complaints regarding pornographic material in the cockpit. *See Montalvo v. Spirit Airlines*, 508 F.3d 464, 472 (9th Cir. 2007) ("The legislative history of the FAA further illustrates Congress' intent to make the Federal Aviation Administration the sole arbiter of air safety"). In fact, by Mr. Nance's own admission, there has never been an aircraft safety incident or accident caused by pilot distraction resulting from pornography in the cockpit. Nance Transcript at 75:3-8. Finally, and perhaps most importantly, Mr. Nance admits that ***"there is no indication that Captain Stout was less than safe."*** Nance Report at 12 (emphasis added). In other words, setting aside Mr. Nance's dire but purely theoretical warnings about safety risks, based on the specific facts of this case there is no dispute that flight safety ***was never actually compromised.***

---

[3] *See also* Nance Transcript at 112:12-14 ("Q: [W]hat does safety have to do with this case? A: Everything"); 131:17-19 ("Well, I could probably find you a solid connection with safety on anything and everything that goes on in the cockpit in flight").

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
TESTIMONY OF JOHN J. NANCE – 5

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

As a threshold matter, in order to be admissible, expert testimony (like all evidence) must be ***relevant***. See *U.S. v. Vallejo*, 237 F.3d 1008, 1015 (9th Cir. 2001) (excluding testimony regarding drug trafficking organizations where defendant was not charged with conspiracy to import drugs). Mr. Nance's proffered testimony fails to cross even the basic relevancy threshold. His opinions regarding flight safety cannot possibly "assist the trier of fact to understand the evidence or to determine a fact in issue," as required by Rule 702, because none of the issues the jury will consider involve safety. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).

Even if flight safety concerns *were* somehow implicated in this case, Mr. Nance's testimony must still be excluded because the risk of prejudice inherent in his opinions outweighs any possible marginal value of his testimony. *U.S. v. Hoac*, 990 F.2d 1099, 1103 (9th Cir. 1993) ("Otherwise admissible expert testimony may be excluded under Fed. R. Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay"). The first five "substantive" pages of Mr. Nance's Report are a rambling dissertation on the "safety revolution" in the airline industry, the theory that any "distraction in the cockpit reduces the margins of safety," the safety risks arguably inherent in "machismo-based" airline management styles, and the steps that pilots are supposedly "honor-bound" to take in order to ensure that cockpits remain free of any "distracting" materials that compromise safety. *See* Nance Report at 3-8. The transparent purpose of Mr. Nance's safety lecture — which is completely untethered from the actual facts of this case, and unsupported by citations to any research, literature, or empirical evidence whatsoever — is merely to establish the relentless drumbeat of "safety, safety, safety," in order to drown out all ***relevant*** issues before the jury.

The Ninth Circuit routinely excludes (under Rule 403) evidence, including expert testimony, that is either calculated or reasonably likely to "arouse irrational fears and

prejudices." *U.S. v. Hitt*, 981 F.2d 422 (9th Cir. 1992); *see also Cohn v. Papke*, 655 F.2d 191, 194 (9th Cir. 1981) ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). In *Hitt*, the jury was shown a photograph of multiple firearms that did not belong to the defendant; applying Rule 403, the Ninth Circuit held that admission of the evidence was error, noting that "[r]ightly or wrongly, many people view weapons, especially guns, with fear and distrust," and finding that the "visceral impact" of the photograph overwhelmed any probative value. 981 F.2d at 424.[4] Moreover, the possibility that expert testimony will unfairly taint a jury's consideration warrants exclusion even where the testimony bears some relevance to the case. *See Vallejo*, 237 F.3d at 1018 (where expert's "otherwise proper testimony as to the fees paid to drug couriers was ***inextricably intertwined with improper testimony*** as to drug trafficking organizations, the trial court abused its discretion by admitting it") (emphasis added).

It is difficult to imagine, in the context of civil litigation, a theme more likely to arouse a jury's fears and emotions than the suggestion that commercial airplanes and passengers are in danger. Mr. Nance fully intends to play upon those fears, by invoking the 9/11 tragedy and describing catastrophic plane crashes (*see* Nance Report at 3-5), and by making inflammatory statements such as "***we have drilled many a hole in many a mountain*** with an airplane piloted by somebody who thought they could compartmentalize [distractions] ...." Nance Transcript at 123:3-5 (emphasis added). Given that <u>none</u> of the legal issues the jury will be called upon to determine in this case involve safety, Mr. Nance's ominous prognostications are particularly inappropriate. *See Hitt*, 981 F.2d at 424 ("Where the evidence is of very slight (if any)

---

[4] *Accord U.S. v. Gillespie*, 852 F.2d 475, 479 (9th Cir. 1988) ("[I]ntroduction of evidence of homosexuality creates a clear potential that the jury may have been unfairly influenced by whatever biases or stereotypes they might hold with regard to homosexuals"); *U.S. v. Bland*, 908 F.2d 471, 473 (9th Cir. 1990) (evidence of past crime was unfairly prejudicial because "facts mentioned are not of the type that would be forgotten by the members of the jury panel ..."); *Jinro America, Inc. v. Secure Invest., Inc.*, 266 F.3d 993, 1009 (9th Cir. 2001)("The manner in which Jinro's status as a Korean business was exploited here begged the jury to draw an inference adverse to Jinro based entirely on its ethnic identity or national origin"). Although many of the cases involving jury taint or bias arise in the criminal context, the Ninth Circuit has recognized that the same principles governing exclusion of prejudicial testimony or evidence apply with equal force in the civil context. *Jinro*, 266 F.3d at 1007.

probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury"). Moreover, there is no dispute in this case that the safety of Plaintiff's piloting was never compromised. *Id.* at 424-35 ("It's bad enough for the jury to be unduly swayed by something a defendant did; it's totally unacceptable for it to be prejudiced by something he seems to have done but in fact did not"). Because all of Mr. Nance's opinions are "inextricably intertwined" with unfairly prejudicial flight safety concerns, his testimony must be excluded under Rule 403. *Vallejo*, 237 F.3d at 1018.

**B.    Mr. Nance's Testimony Will Confuse The Issues And Mislead The Jury.**

In addition to the risk of unfair prejudice, expert testimony must be excluded under Rule 403 if it will potentially confuse or mislead the jury. *Diede*, 772 F.2d at 594. That is true even where the evidence could "lead the jury to draw some perfectly logical – though mistaken – inferences." *Hitt*, 981 F.2d at 424. Here, perhaps the greatest risk of jury confusion lies in Mr. Nance's creation of a *sui generis*, extra-legal set of undefined "duties" that UAL was purportedly "honor-bound" to follow. Mr. Nance's construct is grounded in the assumption that the rule of law is inherently inadequate, because "laws and regulations and aviation are always somewhat behind the realities that we learn of our human systems." Nance Transcript at 56:6-8. Thus, when questioned by *Plaintiff's* counsel regarding "the standards [Mr. Nance] used in [his] opinion and report with respect to the steps that United did take in response to Captain Stout's complaints," Mr. Nance gave the following troubling testimony:

> [I]t is a very serious and very important responsibility for an airline to go beyond legality, beyond regulations, and pay very strict attention to whatever might cause human upset in their pilots that are in the cockpits of these airplanes. Just complying with the letter of the law or the rule of the law is not necessarily sufficient. If you have reason to believe that you've got something that is upsetting one or more of your people – including a major labor dispute, by the way – your responsibility to the flying public is of the highest possible level to do something about it or to refrain from exacerbating that problem. This is a difficult thing to codify, but it is no less important.

*Id.* at 286:17-287:7. Indeed, the attempt to "codify" Mr. Nance's theories eludes not only legal reason but Mr. Nance himself. Mr. Nance testified that UAL had a responsibility "ethically,

1  morally" to address safety concerns (*id.* at 42:2); that this responsibility is based on "honor"
2  and "has to do with your duty to humanity" (*id.* at 165:16-17); and that airlines should be held
3  to a standard of "unusually sensitive empathy to any issue that their pilots encounter." *Id.*
4  at 260:15-16. And Mr. Nance admits that these are not "legal duties." *Id.* at 145:20.

In its S.J. Order, the Court identified the legal issues the jury will be required to evaluate and decide. None of those issues involves considerations of ethics, morality, honor, or "unusually sensitive empathy" (whatever that might be). Experts are automatically "cloaked with the mantle" of credibility, and expert testimony "can be both powerful and quite misleading because of the difficult in evaluating it." *Jinro*, 266 F.3d at 1004-05. It would be not just confusing but wholly improper to permit Mr. Nance to offer his "expert" view on an amorphous set of extra-legal standards that UAL was supposedly bound by, but failed to meet. *See, e.g., DiBella v. Hopkins*, 403 F.3d 102, 121 (2nd Cir. 2005) (excluding business ethics expert where the testimony "would unnecessarily confuse the jury because the real issue in this case was not whether DiBella acted ethically ...").

C.  **Mr. Nance Opines On Ultimate Issues Of Law.**

It is axiomatic that "an expert witness cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law." *Mukhtar*, 299 F.3d at 1066 n.10 (citing *U.S. v. Duncan*, 42 F.3d 97, 101 (2nd Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's")) (all emphases in original). "The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury." *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). (As discussed above, that concern is particularly stark here, given that Mr. Nance has formulated his own panoply of extra-legal duties purportedly applicable to airlines.) One approach for the Court to use in assessing whether an expert is improperly drawing legal conclusions "is to determine whether the terms used by the witness have a separate, distinct and

specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Id.* at 151 (citing *U.S. v. Hearst*, 563 F.2d 1331 (9th Cir. 1977)).

Mr. Nance seeks to opine directly on <u>every</u> legal conclusion the jury will be asked to reach in this case. <u>First</u>, the jury will consider whether Plaintiff was subjected to a "hostile work environment." When asked whether he had an opinion on that issue, Mr. Nance stated: "Yes, clearly. Clearly. This is the intent of our federal laws, and this is the intent of our public policy. … [C]ertainly no one would try to argue that this was not clearly a de facto one-to-one, if it offends a woman, it is a hostile work environment." Nance Transcript at 134:12-18. In addition to invading the province of the Court to instruct the jury, and the role of the jury to determine if UAL created or permitted a "hostile work environment" (a phrase with specialized legal meaning), Mr. Nance's articulation of the law is flatly wrong. *See* S.J. Order at 12.

<u>Second</u>, the jury will consider whether UAL took "adequate remedial measures" that were "reasonably calculated" to remove and prevent pornographic material in the cockpit. *See* S.J. Order at 14. Mr. Nance opines that, in response to Plaintiff's complaints regarding pornography, UAL engaged in "a very ineffectual and nondedicated response that was clearly not calculated in any reasonable way to be effective – in other words, it was way below the threshold of any reasonable expectation that this was going to stop the matter." Nance Transcript at 30:10-15. Plaintiff's counsel put the ultimate legal issue to Mr. Nance directly: "Q: With respect to the steps that United did take in response to her complaints, do you have an opinion whether they were reasonably calculated to end the harassment? A: No, they – in my view, they were very clearly not reasonably calculated to end it." *Id.* at 287:12-17.[5]

<u>Third</u>, the jury will consider whether UAL "retaliated" against Plaintiff as a result of her pornography complaints. *See* S.J. Order at 22-23. Mr. Nance repeatedly concludes, in his

---

[5] In addition to constituting an improper legal conclusion, Mr. Nance's opinions regarding UAL's remedial efforts are simply irrelevant. A significant portion of Mr. Nance's Report sets forth his personal views on what UAL "*could have done*" in response to Plaintiff's complaints. *See* Nance Report at 8-13. But that is <u>not</u> the legal standard: the question is whether the remedial steps UAL *did* take were adequate. S.J. Order at 14.

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
TESTIMONY OF JOHN J. NANCE – 10

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

Report and throughout his deposition testimony, that UAL "retaliated." *See* Nance Report at 14 (letter to Plaintiff's file was "retaliatory and disciplinary"); Nance Transcript at 28:25-29:1 ("[T]his was clearly conduct that rose to the level of retaliatory conduct"). Not only is that an improper legal conclusion for Mr. Nance to draw, he lacks the necessary factual basis to reach that conclusion. An element of Plaintiff's prima facie case to prove "retaliation" is a causal link between the protected activity and the adverse employment action. *See* S.J. Order at 19. But Mr. Nance admits that he has no information that anyone at UAL intended to take any adverse action against Plaintiff (Nance Transcript at 213-215), so he is aware of no causal link between Plaintiff's complaints and the allegedly "retaliatory conduct."[6]

### D. Mr. Nance's Testimony Is Unreliable Under Rules 702 and 703.

When expert testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Kumho*, 526 U.S. at 149 (internal citations, quotations omitted). The Ninth Circuit's opinion in *Jinro* is instructive; there, a purported expert on Korean business practices testified regarding the propensity of Korean companies to evade currency laws. The Court noted that the expert offered "little more than the limited perspective of a professional investigator" whose experience had exposed him to Korean business, and that "he provided no empirical evidence or studies to support his sweeping indictment of the Korean business community – other than to cite newspaper articles and a few anecdotal examples, some of them clearly hearsay." 266 F.3d at 1006.[7]

---

[6] The Court referenced Mr. Nance's Report on the issue of how Plaintiff might have interpreted the Letter of Counsel (S.J. Order at 21-22), but his opinions on that score are not helpful. In his deposition, Mr. Nance stated that "[a]nything – repeat: anything – put in a pilot's file that is not a complimentary letter is a direct and binary threat." Nance Transcript at 238:8-10. Mr. Nance testified that even in a scenario where the airline has a "legal right" to issue a letter of counsel and the letter is not retaliatory, it is *never* appropriate to place such a letter in a pilot's file because it compromises "air safety." *Id.* at 55:6-23. Thus, Mr. Nance proposes to tell the jury that *any* "non-complimentary" note to a pilot's file is *per se* either "retaliatory" or a safety risk. That is not the law.

[7] *See also Recreational Dev. of Phoenix, Inc. v. City of Phoenix*, 220 F. Supp. 2d 1054, 1059-1062 (D. Ariz. 2002) (expert on "swingers" clubs offered only "gross generalizations" based on personal experience, and his failure to identify specific data or sources precluded court from assessing reliability); *Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993) ("human factors" expert's testimony was "just professional speculation").

Mr. Nance's opinions can only *charitably* be described as gross generalizations and professional speculation. When asked if he relied on any specific articles or publications to prepare his Report, Mr. Nance replied: "No. ... I'd say all of it is just out of my head and my memory of it." Nance Transcript at 256:22-25. When he was asked for facts or data to support his claims, Mr. Nance suggested that the data is "myriad," but "I can't cite you chapter and verse." *See Id.* at 20:14. Citations to the factual bases for Mr. Nance's opinions — which the Court *must* have in order to assess the reliability of his testimony — are beyond "the scope of [his] preparation here," but the Court should rest assured that his conclusions are "the gospel truth." *Id.* at 48:3-6; 123:17-19 ("[I]f you want to compensate me for getting back in and writing another paper, I'll find you the research"). Mr. Nance is fond of statements such as "Everyone knows this. ... [T]his is Human Resources 101"(*id.* at 45:8-10), and one does not need "a paper to prove the sun is up at noon." *Id.* at 125:4. Regarding the Letter of Counsel, to support his claim that "[t]here is not a sentient airline pilot on this continent who would not take that as a massive frontal assault, preparatory to being dismissed" (*id.* at 43:15-17), Mr. Nance admits that he spoke to only "maybe 40 or 50" pilots (out of 29,000) "over [his] entire career" regarding that issue. *Id.* at 50:17. While he believes it is a "rare event" when a pilot receives a Letter of Counsel, Mr. Nance gleaned that understanding "[f]rom friends. ... [Y]ou know, over the years, we talk and compare notes." *Id.* at 237:3-6. Based on "common sense," Mr. Nance concludes that "female pilots are generally offended by sexually explicit images." *Id.* at 158:15-17. Based on what he has "seen and heard," Mr. Nance argues that "people with higher educations are more likely to follow rules." *Id.* at 184:8-13. He asserts that pilots "as a breed" are "very much like surgeons" (*id.* at 45:19) and "good at compartmentalizing" (*id.* at 126:10-11), but later identifies that same core trait as a "facade." *Id.* at 130:9-16. In short, Mr. Nance's opinions on "human nature" are nothing more than "sweeping generalizations, derived from his limited experience and knowledge," devoid of any reliable or verifiable empirical or factual underpinning. *Jinro*, 266 F.3d at 1006.

## III. CONCLUSION

Based on the foregoing, UAL respectfully requests that the Court prohibit the use of Mr. Nance's testimony and Report for any purpose at trial.

RESPECTFULLY SUBMITTED this 6th day of November, 2008.

/s/ Tyson K. Harper
Tyson K. Harper, WSBA No. 39720
Stellman Keehnel, WSBA No. 9309
Kit W. Roth, WSBA No. 33059

DLA Piper US LLP
701 Fifth Ave., Ste. 7000
Seattle, WA 98104
Phone: 206.839.4800
Fax: 206.839.4801
E-mail: Tyson.harper@dlapiper.com

Attorneys for Defendant United Air Lines

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2008, I electronically filed the foregoing Defendant's Motion in Limine to Exclude Plaintiff's Proffered Expert John J. Nance with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

> Victoria L. Vreeland
> GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
> 600 University Street, Suite 2100
> Seattle, Washington 98101
> Ph: (206) 676-7500
> Fx: (206) 676-7575
> E-mail: vvreeland@gth-law.com

Attorney for Plaintiffs

DATED at Seattle, Washington, this 6th day of November, 2008.

DLA PIPER US LLP

s/ Tyson K. Harper
Tyson K. Harper, WSBA No. 39720

WEST\21590421.2
DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF JOHN J. NANCE – 14

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800