HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LISA STOUT, individually and the marital community composed of Lisa and Ray C. Stout,<br><br>                      Plaintiff,<br><br>v.<br><br>UNITED AIR LINES, INC.,<br><br>                      Defendant. | NO. CV07-0682 JCC<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT JOHN NANCE<br><br>Noted for Consideration: Nov. 21, 2008 |

### I.    **INTRODUCTION**

Expert testimony is admissible if it is relevant and reliable. Whether it is relevant and reliable depends upon what expert testimony is to be <u>actually</u> offered by plaintiff. The litany of complaints in defendant's motion is due to the broad and tangential inquiries by defense counsel, which were outside and beyond the scope of the opinions to be offered at trial.

John J. Nance is qualified by knowledge, skill, experience, training, or education to testify as to those opinions which are <u>actually</u> offered by plaintiff; and his testimony will help the jury to understand the evidence or to determine a fact in issue. The opinions that he will <u>actually</u> offer at trial are both relevant and reliable as demonstrated below.

Defendant seeks to exclude <u>all</u> expert testimony of Mr. Nance, principally due to ideas, beliefs or personal opinions that defendant elicited during his deposition which are

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 1 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

outside the limited scope of the expert testimony plaintiff _actually_ intends to present. What the Court must assess are the qualifications of Mr. Nance and the actual expert testimony to be offered by plaintiff, not all the other ideas, beliefs or personal opinions Mr. Nance may have regarding all kinds of issues that defendant specifically about during his deposition. Mr. Nance never testified that he would be offering all such testimony at trial or that he was even requested by plaintiff to make such opinions or offer such testimony at trial on those matters pursued by defendant. In fact, plaintiff objected several times that defendant's inquiries exceeded the scope, even suggesting that defendant was trying to set up a straw man to knock down. Indeed, that is exactly what defendant is attempting to do now.

Defendant contends that _all_ Mr. Nance's expert opinions are inadmissible, including those opinions which would actually be offered by plaintiff at trial, because of claimed inadmissible matters which defendant unilaterally pursued and elicited during Mr. Nance's deposition. Plaintiff does not seek admission of the deposition testimony, or even the written report. The Motion should be denied, and as with all testimony offered during trial, the Court will further assess admissibility as the case unfolds.

This opposition is based on the files and records herein and the Declaration of Victoria Vreeland submitted herewith.

## II. ARGUMENT AND AUTHORITY

Expert testimony is admissible if it is relevant and reliable. The Court has a gate-keeping function as to expert testimony including broad latitude in light of the particular case and issues presented.

### A. There are a Multitude of Issues Where Qualified Expert Testimony is Relevant in this Case.

This case presents a unique and specialized workplace -- cockpits of commercial 737s -- and a professional highly regulated employee -- an FAA licensed and certified airline pilot, who is the Captain onboard. The case presents many areas and concepts which are not within

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

the common knowledge of jurors. To assist the jury to understand the evidence or to determine a fact in issue, qualified expert testimony is necessary.

Plaintiff has the burden of proof and must present evidence on the following areas and it is readily seen that these matters are appropriate and necessary for testimony by a qualified expert:

(1) That the pornography she repeatedly observed in her workplace, the cockpits of United 737s, and the failure of her airline to remedy it *created a hostile work environment*, that it *changed the conditions and terms* of her employment. This proof includes evidence that her pre-flight "flows" and checklists as a pilot and captain required that she engage in a proper cockpit inspection especially when "defects" such as porn were found, and that the proper place to document them is in the maintenance logs for removal prior to flight.[1] This proof also includes evidence of how the repeated observations of porn in that unique and small workplace, the write ups and removal could be upsetting to her as the pilot, changing the terms of employment, causing a distraction, degrading or lessening the margin of safety for her and her crew and passengers, and was contrary to and invaded the "sterile cockpit" mandate.

(2) That defendant had "notice" of her continuing reports of pornography, via its official and mandated maintenance logs, including testimony as to the purpose and function of the log as the official record of aircraft defects and corrections required by the FAA.

(3) That the actions taken by defendant were not remedial as they were not reasonably calculated to end the harassment, i.e. that defendant was negligent in its remedial action. This proof includes what reasonable, available steps defendant could have taken based upon a foundation of experience and knowledge of the industry, which is supplied by a

---

[1] Defendant also contends that plaintiff could have avoided the pornography, but that she went looking for it on purpose so that she could make a complaint or seek disability. The expert testimony is also necessary to counter such claims.

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 3 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

qualified expert. This proof includes such steps as an urgent, clear directive and order to pilots and why specific wording is necessary, a similar directive to maintenance and all those with access to the cockpit, an initial overnight sweep of 737s at hubs and follow up routine maintenance checks, use of electronic data readily available to track and identify porn incidents, simple research of fleet routing history, and help and support from management for the reporting pilot under CRM[2] policies.

(4)     That the manner in which plaintiff was treated after making her reports, including the fact and manner of being accused and chastised by her Chief Pilot, being "red flagged" for a fatigue call, and being issued a formal Letter of Counsel in her personnel file for a fatigue call was retaliation. This proof includes, among other things, expert testimony about pilots' requirement for self-policing in matters of fatigue, that the Chief Pilot should have taken other precautions prior to chastisement or punishment, the seriousness of, and extreme care required for, fatigue punishment in the industry due to the chilling effect and safety issues, the direct and serious threat to a pilot's career of a Letter of Counsel and loss of confidence and support by management, and why that is unique to a commercial pilot.

(5)     That plaintiff's conditions at work caused her to seek medical treatment, and that her decision to ground herself was appropriate and necessary, as a professional pilot. This proof includes qualified expert testimony about the duties and requirements of pilots to remove themselves from flying when they believe they are or may be physically or psychologically impaired.

Each of the above areas include information which is not commonly known to a juror. Plaintiff offers the testimony of John Nance on these areas and for general information about

---

[2] CRM is Crew Resource Management, also termed Cockpit Leadership Resource Management, discussed *supra*.

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 4 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

pilots and aviation pertinent to this case.[3] For ready reference, a summary of opinions of Mr. Nance based on his written report are attached hereto as **Appendix A.**

Further, defendant claims that plaintiff was not or should not have been so offended by the pornography and that its existence in the cockpits did not interfere with performance of her duties. The expert testimony is necessary to help the jury understand the unique requirements on the pilot and how the conditions adversely affected her confidence, focus, and ability to safely continue flying, and her need for medical attention.

Defendant's affirmative defense is that it took reasonable care to respond and remedy, and claims that there is such a large number of aircraft and so many flights that its e-notes were adequate. The expert testimony is necessary to explain how defendant's response was not adequate due to what it could easily and reasonably have done, and the requirements of eliminating cockpit distractions which are specific to this industry due to the overriding safety concerns in air travel.

### B. John Nance is Qualified by Education, Experience, Training and Knowledge to Testify on These Subjects.

Mr. Nance is one of the most qualified and well-known aviation experts in the nation. In summary,[4] he started his aviation career as a Distinguished Graduate of USAF Undergraduate Pilot Training Class in 1971 at Williams Air Force Base, and served as pilot of the Lockheed C-141A and B for twenty-three years, including six years of active duty and over twenty years as an Aircraft Commander (Captain) during the Vietnam and Desert Storm/Shield conflicts. He served as Lt. Col. Reserve from 1975-93, and is presently a decorated Lt. Col. in the USAF Retired Reserve. From 1975-82, he was a commercial pilot

---

[3] The written expert report of Mr. Nance is on file herein. *See,* Exhibit K to *Declaration of Vreeland in Support of Plaintiff's Motion for Partial Summary Judgment* (Dkt. 52).

[4] *See,* Curriculum Vitae of John Nance, **Exhibit A** to *Declaration of Victoria Vreeland in Support of Plaintiff's Opposition to Defendant's Motion to Exclude Testimony of John Nance,* (hereinafter *"Declaration of Vreeland Re Nance"*) filed herewith.

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 5 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

for Braniff International Airlines, and from 1985-93 was an active pilot for Alaska Airlines, holding positions of flight officer/flight engineer, first officer/copilot, and captain in both domestic and flag operations. He also previously served as a Pilot Training Consultant and Instructor from 1985-92.

He personally engaged in intensive study and research on Human Factors/Human Performance in aviation, the functions and methodologies of the NTSB, and air accident investigation. In 1986, he published a critically-acclaimed non-fiction book, Blind Trust, which still serves as a prime source for aviation analysis, including human factors and safety. From 1988 – 1993, he served as Project Officer for Cockpit Resource Management and Aircrew Flight Safety Program Development and Education for the U. S. Air Force. He was a pioneer and advocate for the "Crew Resource Management" system (which includes, among other things, the then-new expectation for pilots to listen and work with copilots, to speak up without fear of retaliation), which was incorporated at United Air Lines in its Flight Operations Manual. He has over 13,000 hours of flying time and is nationally recognized as an aviation expert and aviation safety analyst. He has extensive experience and research in human factors in the commercial aircraft industry, with emphasis on pilot behavior, industry rules, expectations, and safety.

Plaintiff timely disclosed the substance and scope of his expert opinions in Plaintiff's Expert Disclosures, stating: Mr. Nance is expected to testify concerning the presence and effect of pornography in the cockpit, the functions of pilots in pre-flight check, the focus required of the pilot, the safety concerns arising from inappropriate materials in the cockpit, the processes, and the procedures and steps United could have reasonably taken to remedy the condition. A written report was also provided to defendant, and is on file in this action.[5] The written report may contain matters which would not be admissible, or would be admissible for

---

[5] See, Exhibit K to Declaration of Vreeland in Support of Plaintiff's Motion for Partial Summary Judgment on file herein (Dkt. 52). For ready reference, see a summary of opinions at **Appendix A.**

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 6 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

a limited purpose. With Mr. Nance's actual testimony at trial, admission of the report would be unnecessary and cumulative. This brief, therefore, does not address admissibility of the written report.

With respect to the areas where plaintiff has offered Mr. Nance's expert testimony, he undoubtedly possesses the requisite qualifications. He has the education, experience, training and length of time in the aviation industry, as a pilot, a trainer, a researcher, a writer, a consultant, a public speaker. He has extensive involvement in pilot and management responsibilities under the CLR or CRM framework, and his knowledge of aircraft operations and human factors make him uniquely qualified in the areas offered by plaintiff. Mr. Nance also has experience in the past with an airline taking strong, immediate and appropriate action to address pornography in the flight decks, and taking action to identify the perpetrators.[6]

### C. The Expert Testimony To Be Offered by Plaintiff is Reliable.

The specialized, expert information and opinions actually to be offered by Mr. Nance at trial pass the "gatekeeper" test of reliability. FRE 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Relevant expert testimony is admissible if it is reliable. The evidence rules assign to the trial judge "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S. Ct. 1167 (1999). Although the trial judges may not abdicate this gate-keeping function, they can formulate their own tests to determine the reliability and relevance. A court is not required to utilize the *Daubert* factors if they do not assist the trial judge in determining

---

[6] *See, Declaration of Vreeland re Nance,* **Exhibit B,** Nance Deposition, pp. 284-85

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 7 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

whether expert testimony is relevant and reliable in a specific case. *Kumho, Id.* 526 U.S. at 141, ("[A] trial court *may* consider one or more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability"). *Kumho* expressly recognizes that there is no mechanical application of any tests of reliability for non-scientific testimony, or scientific testimony for that matter, but instead emphasizes that judges "are entitled to broad discretion when discharging their gate-keeping function." *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2003).

A trial court "not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability." *Mukhtar v. Cal. State. Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002) *citing Hankey*, 203 F.3d at 1167 (emphasis added). When the reliability of evidence depends on personal knowledge or experience, the *Daubert* factors likely will not apply. *See Kumho,* 526 U.S. at 150; *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).

FRE 702 is to be broadly interpreted, along with the great latitude afforded the Court, on a case by case basis. "The advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of a qualified expert." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994); *See also,* Fed. R. Evid. 702 advisory committee's note ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.").[7]

As noted by the Court in *Bates v. King County*, 2007 WL 1412889 (W. D. Wash.), the police practices expert offered was qualified based on experience, not scientific expertise.

---

[7] Under ER 702 and the *Advisory Committee Notes*, the general test is the common sense inquiry whether the <u>untrained layman</u> would be qualified to determine intelligently, and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject. The expert may given opinions and/or "may give a dissertation or exposition of scientific or other principles relevant to the case," and the expert may take the "further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts." *Advisory Committee Notes to ER 702*.

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 8 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Likewise, here, the expert testimony actually to be offered by plaintiff, summarized from Mr. Nance's expert report at **Appendix A**, is based on his qualifications as detailed above of years of experience, research, and involvement in the industry, as a recognized aviation analyst and expert. The opinions and explanations are not of the type that are subject to scientific data and statistical support, or based on methodology or tests that are provided in publications or subject to peer review. Rather, they are based upon knowledge and experience in the industry, as a pilot, as a human factors expert, and as an aviation safety specialist. The experience and his expertise provide the necessary foundation of reliability -- his opinions are based on that wealth of experience and knowledge.

The opinions he will offer are based upon a reliable foundation of evidence, itemized in the disclosures. Mr. Nance reviewed and relied upon evidence in the case as listed in the Plaintiff's Expert Disclosures[8]: e.g., interrogatory answers, chart of pornography found, United maintenance log entries, e-note to pilots, e-note to mechanics, all deposition transcripts of plaintiff, United management personnel and HR staff Sheryl Hinkle, Ulrika Wallitner, Pat Durgan, and Mark Sebby, and the various documents including the Letter of Counsel.

Mr. Nance was provided by plaintiff with a list of areas for giving opinions, which included these inquiries: Were the steps taken by United to remedy the problem of porn in the cockpit adequate? What other steps could United have taken that would have been reasonable? In addition to the full deposition testimonies, he was provided a set of facts as to what United did do which were taken directly from the testimony of United 30(b)(6) witness, Sheryl Hinkle.[9] In reaching his opinions about the adequacy of the actions taken by defendant, he was asked what he relied upon, and he testified as follows starting at page 290-91:

---

[8] *See,* **Exhibit C,** Nance Document Production List, *Declaration of Vreeland re Nance,* attached hereto.

[9] *See,* **Exhibit D,** *Declaration of Vreeland re Nance,* pp. NANCE 00021-22, in Exhibit 87 to Deposition of John Nance.

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 9 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Q. With respect to your opinion as to whether United's actions were reasonably calculated to remedy or to correct the situation, did you rely on these facts?

A. I relied on looking at these facts and considering them in full, as to not only what was stated as the policy and the procedures at United, but also what I know of the airline industry and what is possible.

Q. Did you review all the deposition testimony that was provided to you?

A. Yes, I did.

Q. And, that's listed in this document: Lisa Stout, Sheryl Hinkle, Ulrika Wallitner, Patrick Durgan. Did you review their deposition testimony?

A. Yes, I did.[10]

His opinions are based on sufficient facts and data in the case, as well as his knowledge and experience, which also provides the basis of his explanatory information about pilot behavior. Any issues as to his credentials or sufficiency of his review would go to the weight of his testimony but not the admissibility. The expert can be scrutinized and challenged on cross examination, and the substance and strength of his opinions are thus contested. *See, Zuchowicz v. United States*, 140 F.3d 381, 387 (2d Cir. 1998); *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76 (2d Cir. 1997).[11] As noted by many courts in admitting expert testimony, the use vigorous cross-examination, and instruction on the burden of proof are the traditional and appropriate means of attacking admissible expert testimonial evidences.

Because defendant thinks the expert report is "rambling" or not similar to what it has seen from a professional expert witness is not pertinent at all. The opinions to be offered by

---

[10] *See*, **Exhibit E**, *Declaration of Vreeland re Nance*, Nance Deposition, pp. 290-291.

[11] At issue was whether the airline was negligent in its baggage delivery system design. Plaintiff's safety expert was improperly excluded. He would have testified that the systems was unreasonably unsafe for older people, and that the interaction between the baggage claim system and the passengers attempting to claim their baggage caused plaintiff's injury. In ordering remand, the appellate court stated that "to require the degree of specificity the court imposed came close to letting that industry indirectly set its own standards. At times this cannot be avoided. But where, as here, well-trained people with somewhat more general qualifications are available, it is error to exclude them." *Id.,* 117 F.3d at 82

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 10 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

plaintiff through Mr. Nance will assist the jury in assessing the reasonableness and adequacy of the responses and actions of the airline in responding to plaintiff's complaints, and the reasonableness of her actions and reactions in reporting impaired and unable to fly. They are not based on speculation or subjective beliefs, but on extensive knowledge and experience. They will help the jury to understand the evidence and make informed decisions.

### D. The Role of "Safety" in the Expert's Opinions.

Defendant argues that this case is not about safety. However, there is a necessary element of safety which is inherent in the case due to the unique nature of the workplace, *the flight deck of a commercial Boeing 737*, and the job and identity of the plaintiff employee, the *Captain of that aircraft*, and the timing of the harassment, *right before take off during preflight checks and at times during flight,* and the length of time that passed without a remedy. The reaction of plaintiff to the repeated images in her flight deck is impacted by her feelings of safety.[12] What is adequate and remedial in this unique situation cannot exist in a vacuum without a component of safety. Whether defendant was negligent in failing to adequately and promptly undertake a remedy calculated to end the harassment and deter future harassment necessarily includes a safety component in this case, because the duty and breach of duty in the context of this case has safety overtones.

In addition, the failure of the defendant to follow its own sexual harassment policies, and corporate policies and practices is also relevant. United's corporate value is *Safety At All Times In All Things*. It operates under the *Rule of Threes: Safety, Service, and Integrity & Responsibility*. It acknowledges in its Flight Operations Manual that *safety is the most important operating rule of any transportation system.*

---

[12] Similarly, in an industrial environment, if an employee is being harassed because of gender or race, and the harassers were tinkering with equipment which could more easily injure the employee or others, the safety component of the harassment has a great impact on the employee's sense of hostile work environment and reaction to the actual acts of harassment. There are many analogies which can be drawn depending upon the type of harassment, the work environment, and the duties of the harassed employee.

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 11 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Nevertheless, the actual safety matters to be offered by plaintiff through Mr. Nance's testimony are very limited. Plaintiff does not offer Mr. Nance to opine regarding whether defendant violated any FAA safety rules or regulations, or to testify about his beliefs of the high safety standard for airlines. What plaintiff actually is offering through the expert testimony is limited with regard to safety as shown in the summary of opinions as **Appendix A,** and the actual report of Mr. Nance. The actual testimony with any safety component is limited -- pornography is a distraction, distraction can lessen the margin of safety, if it continues it can contribute to the decline of overall safe operations. The only other safety component is in the self-policing to report fatigue, and the professional responsibility of plaintiff to ground herself for safety reasons. This limited testimony about conduct which can reduce or lessen the margin of safety, and why it impacted plaintiff so, does not create the "specter of planes falling from the sky" to "taint any assessment by the jury of UAL's efforts to address Plaintiff's concerns" as argued by defendant. (Dkt. 94, p. 1, lines 21-22).

Defendant asked lots of questions of Mr. Nance at his deposition, many of which were outside or beyond the scope of the opinions to be expressed. Mr. Nance responded with detailed explanations, history and examples, his philosophy and belief on several topics, and all kinds of things. But, defense counsel did not ask him if he intended to offer all such opinions, beliefs or ideas at trial, or whether plaintiff had even asked him to render an opinion or make a statement on all those various areas and events. Although Mr. Nance has a strong belief as to the high degree of safety and responsibility that airlines owe to the public, this is not the basis of his opinions as to the effect of pornography on a pilot, or what steps the airline should have taken which would be effective or reasonably designed to end the harassment, or the effect of the Letter of Counsel on plaintiff, or her professional responsibility in grounding herself, or the purpose of the maintenance logs.

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 12 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

## F. The Testimony is Not Otherwise Inadmissible under FRE 403

Expert testimony that is relevant and is reliable is admissible unless its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury under FRE 403.

If the expert's written report or portions of the deposition testimony contain inadmissible material, that is not the question here. The question here is whether the actual expert testimony to be offered by plaintiff (as opposed to the written report, or the variety of beliefs and ideas on many topics and other issues in the case elicited by defendant during Mr. Nance's deposition) would confuse the issues or mislead the jury, or result in unfair prejudice. Just because testimony may be contrary to a defendant's position does not render it unfairly prejudicial. It is rare that evidence that has probative value is excluded on the basis of FRE 403, unless there is something in that evidence that is inherently prejudicial such that the value of the evidence is *substantially outweighed.* In light of what Mr. Nance will actually offer in trial as expert testimony, there is nothing inherently prejudicial. His testimony is relevant, he is qualified, it is based upon sufficient data, it is reliable, and it will assist the jury in assessing the actions of defendant and of plaintiff.

Last, defendant claims that Mr. Nance intends to offer testimony on the ultimate issues of law in this case. Such opinions are not included in what plaintiff intends to offer or in his summary of opinions. There is no offered testimony on the ultimate issue of law. To the extent that he testifies on the inadequacies of the actions by defendant to "remedy" the workplace or what else they could have done, this involves facts not ultimate issues of law. Plaintiff requests that the Court deny the motion to exclude the expert testimony of Mr. Nance, as to that testimony which plaintiff will actually offer in this case.

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 13 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Dated this 17th day of November, 2008.

GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP


By /s/Victoria L. Vreeland
 Victoria L. Vreeland, WSBA No. 08046
 vvreeland@gth-law.com
 Stephanie Bloomfield, WSBA No. 24251
 sbloomfield@gth-law.com
 Attorneys for Plaintiff

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 14 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

# CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on November 17, 2008, I electronically filed the following: (1) PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT JOHN NANCE, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tyson K. Harper, WSBA No. 39720
Stellman Keehnel, WSBA No. 9309
DLA PIPER US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044

(206) 839-4800 - telephone
(206) 839-4801 - facsimile
stellman.keehnel@dlapiper.com
Tyson.Harper@dlapiper.com

*Attorneys for Defendant*

DATED this 17th day of November, 2008.

        s/Victoria L. Vreeland
        Victoria L. Vreeland, WSBA No. 08046
        vvreeland@gth-law.com
        GORDON, THOMAS, HONEYWELL, MALANCA,
        PETERSON & DAHEIM LLP
        600 University, Suite 2100
        Seattle, WA 98101
        Tel: (206) 676-7500
        Fax: (206) 676-7575

PLAINTIFF'S OPP TO DEFS MIL TO EXCLUDE
THE TESTIMONY OF JOHN NANCE- 15 of 15
(No. CV07-0682 JCC)
[196848 v02.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

# APPENDIX A

Summary of Opinions of John Nance – Stout v. United Air Lines

1. Pornography in the cockpit is a distraction for a pilot in any phase of airline operations. For a pilot who is offended and upset by such pornography, the level of distraction is increased. An upset pilot is a distracted pilot. A distracted pilot in any phase of airline operation is less able to perform at the highest levels of awareness and skill application than a non-distracted pilot. Distracted pilot equals a lesser margin of safety than a non-distracted pilot.

The significance of the need for no distractions in the cockpit is exemplified in the adoption of the Sterile Cockpit rule in aviation. Pilots are prohibited from discussing anything not directly related to safety operation of aircraft from pushback through 10,000 feet, and for descent through 10,000 until parked

Any occurrence that sufficiently upsets angers, agitates, threatens, or otherwise throws a pilot emotionally off balance to any significant degree is a distraction that lessens the margins of safety. This is also the reason that pilots are to recognize their own fatigue and self-report and refuse to fly if they are fatigued.

A pilot who is personally affected and upset by repeated presence of sexually explicit, graphic photos glued or tucked into the working environment (cockpit), and the failure of airline to take appropriate action is a distracted pilot whose performance is degraded. Any degradation risks a decline in overall flight safety.

The presence of sexually explicit materials in 737 cockpits present a safety issue, which is serious, especially if not addressed by the company, and would create a risk of decline in overall flight safety.

2. A Captain running through preflight duties finding something not normally aboard, or unacceptable as a matter of company policy, has a duty to have it removed. When the pilot finds during the "flow" in preflight check, sexually explicit materials, he or she may fairly assume other materials are secreted in the area, and has duty to look and make sure there is not more there, even in absence of any specific written requirement to do so. Because could be a potential flight safety issue, the Captain should assure that the cockpit clean of such materials.

The presence of pornographic materials must be documented in maintenance log, to memorialize and report. The maintenance logs are official and required by law, and are the official record of the maintenance of the aircraft. The aircraft is not ready to fly with sexually explicit material in the cockpit, and logging them on the maintenance log is the appropriate medium for documenting and requesting cleanup of aircraft.

3. Steps and acts by the airline which could have readily been taken which are reasonably calculated to end the harassment and deter future harassment include:

a. Issued a clear directive to all personnel having access (pilots, flight attendants, cleaners, mechanics, etc.) that placing, condoning, failing to remove and report, or permitting another to place such materials would result in discipline up to and including termination.

> Communications from company to pilots, or to maintenance, needed to have adequate language to put the perpetrators on notice that behavior was not tolerated, that has a clear warning, that violation of the policy could result in severe disciplinary action up to and including immediate termination. Watered down enote to pilots carried no sense of urgency, no clear indication of what "inappropriate materials" meant. It needed to be an urgent directive or order, given the nature and volume of the information directed to pilots to read.

b. A baseline week of all 737's awaiting departure overnight at one of United's hubs should have been done. This would clean up and give a baseline for future discovery of pornography, and would provide a very clear message to mechanics.

c. Managers/personnel responsible for responding to Stout's complaint(s) should have sought and been given help from higher levels, operational levels, and should have taken responsibility to make sure United responded with determination.

d. Managers/personnel responsible for responding to Stout's complaint(s) gave up too quickly – should have signaled would pursue.

e. The message to those with access to the cockpit should have been unmistakable that practice must end.

f. Should have used electronic/computer database to track the 737 fleet. Should have searched the maintenance write-ups (easy to do) to determine extent of problem, may have found particular base generating existence of porn or other information to identify the source. Managers/personnel responsible for responding to Stout's complaint(s) failed to even access or review the maintenance logs of 737 to get information useful to help stop placement of pornography, even though the logging was mandatory. The logs gave notice to United of the reports.

g. Should have immediately/consistently taken the stance that reporting pilot be protected and supported, utilizing the CRM response and not reverting to the old atmosphere of conformity. The reports by Stout became an unwelcome irritant.

h. A Captain faced with hostility from management, clear lack of trust, or non-supportive, suspicious environment is at substantial risk in continuing to serve as a pilot in command.

i. Treatment of Stout has chilling effect on other pilots reporting

4.     The pilot has a duty to self-report and remove himself or herself from flying if there are psychological or physical impairments, for safety reasons. Capt. Stout properly and professionally removed herself from flying and sought medical attention.

The public trust absolutely includes self-policing for any problem that could compromise safety of flight and passengers. This is the case for alcohol and drugs. And over the past several years, through the new approach to safety and human factors, the self-policing also includes fatigue, cumulative fatigue, distraction, sickness, and emotional problems.

Docking Capt. Stout in pay for fatigue was disciplinary and reactionary, because Durgan or others did not attempt to first determine whether that trip removal was due to a company-triggered problem, even if outside of operations. She was treated differently as to being docked in pay for a fatigue call after she complained of pornography.

The Letter of Counsel was a direct and serious threat. A pilot's career hangs by threads of continuous medical qualification and ability to pass checkrides and proficiency scrutiny, and anything inserted in pilot personnel file is a direct and serious threat to career. Is the start of building a record to support a future dismissal. It demonstrated the company's loss of confidence and withdrawal of support.