1

2

3

4

5

6

7

The Honorable John C. Coughenour

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 10 LISA STOUT, individually and the marital community composed of Lisa and Ray C. 11 Stout, <br> 12        Plaintiff, <br> 13    v. <br> 14 UNITED AIR LINES, INC., <br> 15        Defendant. | No. CV07-0682 JCC <br><br> **DEFENDANT'S RESPONSES TO PLAINTIFF'S MOTIONS *IN LIMINE*** <br><br><br> **NOTED FOR CONSIDERATION:** <br><br> **NOVEMBER 21, 2008** |

16

17     Defendant United Air Lines, Inc. ("United") hereby submits the following responses to

18 Plaintiff's Motions *In Limine*.[1]

19    **A.**    **Plaintiff's Income Derived From Her Loss of License Insurance is**
20               **Admissible to Demonstrate Motive and to Impeach Plaintiff's Credibility.**

21     Plaintiff moves to exclude evidence that she has received – and will continue to receive

22 – $1,800 per month in Loss of License insurance benefits due to Plaintiff's voluntary medical

23

24   [1] Plaintiff submitted its motions *in limine* in a single, consolidated brief rather than filing separate motions. For
ease of reference, United has also filed its responses in a single, consolidated brief, and the letter heading of each
25 response herein corresponds to the letter heading in Plaintiff's filing. For each response included herein, United
has observed the Local Rules governing maximum page length, but the entire brief (like Plaintiff's *in limine*
26 motion brief) exceeds the 12-page limit set by the local rules. United asks the Court to accept this overlength
brief, since it was not possible to respond to Plaintiff's 15 *in limine* requests in 12 pages.

DEFENDANT'S RESPONSES TO PLAINTIFF'S MOTIONS
IN LIMINE - 1
NO. 07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1 grounding and the resulting suspension of her commercial pilot's license. Plaintiff's sole

2 argument is that the Loss of License benefits are collateral source payments and so cannot

3 reduce potential damages in the case.[2] While Plaintiff is correct that the evidence cannot offset

4 damages, Plaintiff's motion should be denied because evidence of Plaintiff's Loss of License

5 insurance benefits is admissible to show motive and to impeach her credibility.

6      There is a serious question whether Plaintiff was actually psychologically impacted by

7 seeing pornography (as she contends), or whether she used the pornography sightings as a

8 convenient opening to exit work at essentially full pay and enjoy an early and lucrative

9 retirement. Evidence pertaining to a party's motive is relevant and admissible. *Davis v.*

10 *Alaska*, 415 U.S. 308, 316 (1974) ("possible biases, prejudices, or ulterior motives of the

11 witness … [are] subject to exploration at trial, and [are] 'always relevant as discrediting the

12 witness and affecting the weight of his testimony.'" (quoting 3A J. Wigmore, Evidence § 940,

13 p. 775 (Chadbourn rev. 1970)); FRE 402. Moreover, evidence of insurance benefits from a

14 collateral source is admissible if relevant to some other material issue in the case. *See, e.g.,*

15 *Fitzgerald v. Expressway Sewerage Const., Inc.*, 177 F.3d 71, 75 (1st Cir. 1999). Here,

16 Plaintiff's income from her Loss of License insurance is plainly relevant to Plaintiff's financial

17 incentives for seeking a medical grounding and for claiming emotional distress injury, and thus

18 is relevant to show motive. Prior to her medical grounding, Plaintiff's base salary (excluding

19 overtime pay) was $9,044 per month. In 2008, when Plaintiff did not work a single day, her

20 combined long-term disability payments (paid by United) and Loss of Life insurance benefits

21 equaled $9,359 – more than her base salary when she was working full time for United. This

22 substantial financial incentive is admissible to show Plaintiff's ulterior motives in seeking to be

23 medically grounded in 2005. Furthermore, Plaintiff can continue to collect her Loss of License

24  

25

26
_____

[2] Plaintiff mistakenly cites FRE 409 as the evidence rule governing the Court's analysis on this issue. FRE 409 states, "Evidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury." Plaintiff's motion does not seek to exclude evidence of payments for medical or similar expenses, nor does United offer them to prove liability; therefore, FRE 409 is plainly inapplicable.

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 2
CASE NO. CV07-0682JCC

1   insurance payments only so long as she remains "disabled" by her medical condition.
2   Therefore, Plaintiff continues to have a strong incentive to overstate her emotional distress in
3   order to continue to receive Loss of License insurance payments.

4          Evidence concerning Plaintiff's Loss of License insurance is further admissible to
5   impeach Plaintiff's credibility.  Specifically, Plaintiff made false statements to her insurance
6   company in her application to increase her Loss of License insurance coverage.  In seeking to
7   nearly double the amount of her coverage, Plaintiff falsely stated to her insurance company that
8   her FAA Airman Medical Certificate had never been denied, suspended or revoked, when in
9   fact Plaintiff's FAA Medical Certificate had been revoked in 2001 when Plaintiff voluntarily
10  grounded herself following the events of September 11, 2001.  (Harper Declaration in Support
11  of Defendant's Responses to Plaintiff's Motions in Limine ("Harper Dec."), ¶ 6.)  This false
12  statement is one of several instances in which Plaintiff has made inconsistent or inaccurate
13  claims when she was seeking to obtain some benefit: Plaintiff failed to disclose counseling and
14  medical concerns to the FAA when applying for her FAA Medical Certificates in 1995 -1998;
15  Plaintiff failed to disclose that her FAA Medical Certificate had previously been revoked in
16  2001 when applying for increased insurance coverage; and Plaintiff told United she had a
17  lifelong history of medical issues when applying for long-term disability with United, but she
18  now claims this is not true.  This evidence is highly relevant and admissible to demonstrate
19  Plaintiff's questionable credibility to the jury.

20         Plaintiff's insurance benefits are relevant, probative evidence necessary to show
21  Plaintiff's financial incentives to claim injury from exposure to explicit materials and to
22  impeach Plaintiff's credibility.  United will not argue at trial that such evidence should be
23  considered by the jury to reduce United's potential damages.  In any event, a limiting
24  instruction will be sufficient to ensure the jury does not offset damages, if it reaches the issue of
25  damages.  Accordingly, Plaintiff's sole argument for inadmissibility is misplaced, and
26  Plaintiff's motion should be denied.

**B.    The Evidence Identified by Plaintiff is Relevant to Numerous Issues That the Court Did Not Determine in its Summary Judgment Order.**

Plaintiff seeks to exclude seven specific pieces of evidence based on the Court's November 4, 2008 order denying the parties' cross-motions for summary judgment (the "Order"). (Dkt. 87). However, Plaintiff misinterprets the Court's Order and attempts to broaden the Order in such a way that would exclude clearly relevant evidence. Because the seven pieces of evidence identified by Plaintiff are materially relevant to pending issues in this litigation, Plaintiff's motion should be denied.

The sole issue conclusively determined by the Court in its Order is that the pornography at issue is "objectively offensive." (Dkt. 87 at 10.) United has never argued that the pornography is not objectively offensive, and United will not make such an argument at trial. The Court's Order, while disagreeing with portions of United's summary judgment argument, did not conclusively establish that plaintiff was subjectively offended by the pornography. FED. R. CIV. P. 56(d)(1) (the Court "shall thereupon make an order specifying the facts that appear without substantial controversy."). However, for purposes of this motion, Plaintiff's subjective belief as to offensiveness is irrelevant. Even assuming that the Court has conclusively decided that Plaintiff was subjectively offended by the pornography, the seven pieces of evidence at issue in this motion are nonetheless relevant to the jury's determination of whether the pornography at issue was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

As Plaintiff concedes, the Court's Order leaves open the question "whether under the reasonable woman standard [the pornography] was pervasive and severe enough to … alter the conditions of plaintiff's employment." (Pl. Motion at 5:10-11.) The evidence that Plaintiff seeks to exclude is certainly relevant to this determination. For example, the jury could conclude that, while offensive, the pornography was not so severe and pervasive as to interfere with Plaintiff's job, particularly considering that Plaintiff had previously worked in

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 4
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   circumstances where pornography was present (*e.g.*, a retail store, United airplanes in the early

2   1990s) and Plaintiff had voluntarily exposed herself to explicit nudity in other circumstances

3   (*e.g.*, art classes, art exhibits).

4       Moreover, the evidence identified by Plaintiff is further relevant to issues of causation.

5   Plaintiff claims that exposure to pornography caused her life-altering medical problems that

6   preclude her from ever working for United again.   United is entitled to rebut these claims by

7   showing that Plaintiff had previously been exposed to pornography and explicit nudity

8   (including on United flight decks) without any evidence of distress or medical problems.  This

9   evidence is crucial to rebutting Plaintiff's tenuous causation claims.

10      Furthermore, some of the evidence Plaintiff seeks to exclude has nothing to do with

11  Plaintiff's reactions to pornography, and Plaintiff provides no explanation why this evidence

12  should be excluded.  For example, evidence from the biography flap of Plaintiff's novel (which

13  states that Plaintiff considers herself first and foremost a writer and artist) has nothing to do

14  with pornography, but is materially relevant to Plaintiff's financial motivations in seeking

15  disability and damages from United to support her true career aspirations.  Plaintiff fails to

16  provide a basis why this evidence should be excluded.  Similarly, evidence that Plaintiff moved

17  to Jefferson County and evidence of her artwork depicting her distaste for work are wholly

18  unrelated to Plaintiff's arguments concerning whether the pornography was offensive.  Rather,

19  this evidence is relevant and admissible to show that Plaintiff was not devoted to her work as a

20  pilot and would not have worked for United until age 65 (as Plaintiff's damages expert

21  assumes).  This evidence is relevant to Plaintiff's motive in seeking disability and is critical to

22  evidence her damages (if any) at trial, for the evidence is typical of the information on which

23  defendants must rely in employment cases when plaintiffs make self-serving claims that they

24  would work as many years as possible.  Again, Plaintiff has provided no basis to exclude such

25  evidence.  Because this evidence is relevant and Plaintiff has offered no basis to exclude it, this

26  evidence is admissible at trial. *See* FRE 402.

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 5
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    Plaintiff's summary reference to FRE 403 is also unpersuasive.  Plaintiff fails to

2    articulate the danger of unfair prejudice and does not explain how admission of such evidence

3    would substantially outweigh its significant probative value.  Moreover, the evidence is not

4    particularly complicated (*i.e.*, it will not confuse the jury), and the evidence can be efficiently

5    introduced at trial.

6    **C.    Plaintiff's False Statements to the Federal Aviation Administration Are**

7    **Relevant and Admissible and Were Timely Disclosed by United.**

8    Plaintiff argues that the Court should exclude Plaintiff's misrepresentations to the

9    Federal Aviation Administration because United supposedly failed to timely disclose these

10   statements in response to Plaintiff's Interrogatory No. 1.  This argument by Plaintiff is simply

11   wrong.  On June 30, 2008, Defendant served Defendant's Second Supplemental Responses to

12   Plaintiff's First Discovery Requests, which disclosed:

13       Capt. Stout had personal concerns of depression for several years prior to
14       September 11, 2001, and she sought advice and counseling for this depression
         on multiple occasions in the years prior to September 11, 2001.  However, when
15       applying for her pilot's medical certificates prior to September 11, 2001, Capt.
         Stout falsely stated that she had never suffered from depression.  These false
16       statements constituted violations of [FAA] and United rules and regulations and
         may also constitute criminal acts.  United was not aware of these false
17       statements by Capt. Stout prior to this litigation because Capt. Stout failed to
18       disclose this critical information to United.

19   (Harper Dec. ¶ 3.)  This supplemental discovery response gave Plaintiff prompt notice and

20   ample opportunity to conduct discovery into the after-acquired evidence defense.  Plaintiff has

21   absolutely no basis to make her unsupported argument that this defense was not disclosed.

22   Plaintiff's alternative theories concerning the admissibility of her misrepresentations to

23   the FAA are similarly inapposite.  Contrary to Plaintiff's assertion, Plaintiff's false statements

24   to the FAA medical examiner are clearly relevant to this case.[3]  To satisfy its burden on the

25   _____

26   [3] This Court's summary judgment Order did not question the relevance of Plaintiff's misrepresentations to the
     after-acquired evidence defense.  Rather the Court declined to affirmatively hold that the defense "applie[d] here."
     (Order, Docket No. 87, at 27:18.)  To the extent that the after-acquired evidence defense is an issue for the jury in

1    after-acquired evidence defense, United must prove that, because of Plaintiff's misconduct,

2    United would have discharged Plaintiff. *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d

3    756, 759 (9th Cir. 1996). Plaintiff's false statements to the FAA violated United's policies and

4    constituted grounds for discharge. Thus, Plaintiff's false statements help establish each

5    necessary element of United's defense, and are undoubtedly relevant. *See* FRE 401.

6         Moreover, Plaintiff's misrepresentations are relevant to impeach Plaintiff. On a number

7    of occasions, Plaintiff has made inconsistent statements about her medical condition in order to

8    obtain financial benefits. For example, Plaintiff claimed a lifelong history of certain medical

9    conditions when she sought to obtain long-term disability from United, but when confronted

10    with her statements to the FAA, Plaintiff now claims that she did not have a lifelong history of

11    these same medical conditions. These inconsistent statements are admissible to impeach

12    Plaintiff about her testimony concerning the history and causes of her medical problems, which

13    will be a central issue at trial.

14         Plaintiff's footnoted argument that the after-acquired evidence doctrine is not relevant

15    to United's underlying liability is also unavailing. (Pl. Motion at 7 n.3.) Regardless of whether

16    such evidence is relevant to United's "underlying liability," it is unquestionably relevant and

17    probative regarding "the specific remedy to be ordered." *McKennon v. Nashville Banner*

18    *Publishing Co.*, 513 U.S. 352, 360 (1995). Therefore, United is entitled to present evidence

19    that Plaintiff engaged in misconduct and that United would have fired Plaintiff so that the jury

20    may determine whether such evidence should limit Plaintiff's front and back pay damages. *See*

21    *Martini v. Boeing Co.*, 137 Wash. 2d 357, 367-68, 971 P.2d 45 (1999) (holding that under

22    Washington law back pay and front pay damages are for the jury to decide).

23         With respect to Plaintiff's FRE 403 argument, Plaintiff fails to state the correct

24    standard. For a court to exclude evidence, "the danger of prejudice must not merely outweigh

25

26    this case – which United believes it is – Plaintiff's misrepresentations to the FAA are plainly relevant to this issue.

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 7
CASE NO. CV07-0682JCC

DLA PIPER US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1   the probative value of the evidence," as Plaintiff argues, "but substantially outweigh it."

2   *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995).   Plaintiff cannot make this

3   showing.   As explained above, Plaintiff's false statements to the FAA medical examiner are

4   facts essential to United's after-acquired evidence defense.   This evidence is highly probative,

5   without which United will not be able to carry its burden of proving Plaintiff's misconduct.   On

6   the other hand, Plaintiff fails to articulate how her false statements are unfairly prejudicial, or

7   how admission of them substantially outweighs their crucial probative value. [4]

8        Finally, FRE 404 is inapplicable.   Plaintiff's false statements to the FAA medical

9   examiner are not character evidence, and United is not offering this evidence for the purpose of

10  proving actions in conformity with any character trait.   Rather, United seeks to introduce this

11  evidence as concrete proof of Plaintiff's misconduct, for which she would have been fired, and

12

13  to potentially impeach Plaintiff's testimony at trial concerning the history and causes of her

14  medical problems.   For these purposes, this evidence is highly relevant and should be admitted.

15  **D.    Evidence Concerning Plaintiff's Financial Circumstances is Relevant to Her**
    **Financial Motivations, to Her Reasons for Ending Therapy, and to the**
16  **Causes of Her Purported Distress, and Plaintiff Has Made These Issues**
    **Relevant.**
17

18       During discovery in this case, Plaintiff produced evidence and testimony suggesting that

19  she took certain actions and incurred certain damages as a result of her strained financial

20  circumstances.   As a result, Plaintiff has placed her financial circumstances at issue in this

21  litigation.   After Plaintiff has opened the door and made this evidence relevant, Plaintiff cannot

22  now seek to exclude it from trial to United's detriment.

23

---

24  [4] Likewise, Plaintiff offers no explanation as to how admission of her false statements to the FAA will "waste time and confuse the jury."   Pl. Motion at 7:21.   Without supportive authority or reasoning, Plaintiff's bare assertion cannot justify exclusion of this crucial evidence.   Plaintiff's false statements are unique facts of her misconduct, and their admission into evidence cannot be deemed cumulative or wasteful.   Further, the Court may provide an appropriate jury instruction so that the jury will consider this evidence only when determining Plaintiff's front and back pay damages.   *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (reaffirming that jurors are presumed to follow the instructions they are given).

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 8
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    A key issue at trial will be the extent of Plaintiff's purported emotional distress. One

2   piece of evidence suggesting that her distress was relatively minimal (if it existed at all) is that

3   Plaintiff stopped going to therapy just three months after she medically grounded herself. A

4   reasonable juror could conclude that Plaintiff's decision to end therapy is indicative of a minor

5   level of distress. Plaintiff, however, has produced evidence in this case that she stopped

6   therapy for financial reasons. Therefore, evidence of Plaintiff's financial circumstances is

7   critical to rebut Plaintiff's explanation and to show that Plaintiff had more than sufficient

8   financial resources to attend therapy.

9    In addition, Plaintiff has produced evidence that the loss of her career and resulting

10  financial situation has led to additional stress and conflict in her life. Plaintiff's psychological

11  expert even references Plaintiff's "precarious financial situation" as a possible cause of conflict

12  in Plaintiff's life, thus leading to additional distress. Based on Plaintiff's own reliance on this

13  financial evidence, Plaintiff has absolutely no grounds to exclude evidence presented by United

14  that tends to show Plaintiff's comfortable financial circumstances and the absence of

15  financially-induced stress as claimed by Plaintiff.

16   In light of the relevance and substantial probative value of Plaintiff's financial

17  circumstances, Plaintiff's FRE 403 argument falls flat. The salient issue is whether such

18  evidence's "probative value is *substantially outweighed* by the danger of unfair prejudice,

19  confusion of the issues, or misleading the jury…" FRE 403 (emphasis added). Here, Plaintiff

20  speculates that the jury may misuse the evidence in determining damages. However, the Court

21  will instruct the jury on the law, thereby reducing any potential unfair prejudice. This slight

22  potential for prejudice cannot overcome the substantial probative value of the evidence as

23  discussed above, nor would it be fair to exclude evidence necessary to rebut arguments that

24  Plaintiff has made relevant in the case. The Court should deny the motion *in limine.*

25

26

DEFENDANT'S RESPONSES TO PLAINTIFF'S                    DLA Piper US LLP
MOTIONS IN LIMINE - 9                          701 Fifth Avenue, Suite 7000
CASE NO. CV07-0682JCC                    Seattle, WA  98104-7044 | Tel: 206.839.4800

1   **E.   Plaintiff's Email Admissions Are Relevant to United's Defense Against**
2   **Plaintiff's Retaliation Claims, and the Emails Should Be Admitted Without**
    **Redaction.**

3   Plaintiff argues that obviously admissible emails written by Plaintiff to her friend Anne

4   Denton should be redacted to remove Plaintiff's "colorful" language and swear words. (Pl.

5   Motion at 9.)  This argument ignores the fact that these emails are of central relevance to

6   Plaintiff's claims of retaliation.  Moreover, there is no basis to exclude any portion of the

7   emails from trial on grounds of hearsay, relevance, or under FRE 403.

8   Plaintiff's emails are not hearsay, but instead are admissions by a party opponent.  FRE

9   801(d)(2) provides that "[a] statement is not hearsay if ... [t]he statement is offered against a

10  party and is the party's own statement."  Here, United seeks to introduce Plaintiff's own email

11  statements against Plaintiff at trial.  These statements are plainly admissible.  The fact that

12  these statements were made to Anne Denton – a friend of Plaintiff who may testify at trial – is

13  irrelevant to their admissibility.  Plaintiff's own admissions are not "duplicative" of what Anne

14  Denton might testify to at trial.  Furthermore, it is axiomatic that United need not present

15  Plaintiff's email admissions through the filtered testimony of Plaintiff's best friend.  Plaintiff's

16  argument to the contrary is unsupportable.

17  Moreover, Plaintiff's emails are unquestionably relevant to Plaintiff's retaliation

18  claims.[5]   Plaintiff claims that United retaliated against her when her supervisor, Chief Pilot

19  Patrick Durgan, initiated two counseling sessions with Plaintiff concerning Plaintiff's

20  combative and inappropriate communication style with her coworkers.  Plaintiff's emails

21  describe in detail these same two counseling sessions between Mr. Durgan and Plaintiff.  In

22  fact, Plaintiff's emails demonstrate that Mr. Durgan's counseling of Plaintiff was for legitimate,

23  non-discriminatory reasons, and that Plaintiff did not perceive that Mr. Durgan's counseling

24

25  [5] United further notes that, during discovery in this case, Plaintiff did not produce her full emails, but improperly
    produced heavily redacted versions of these emails to remove supposedly irrelevant material, without seeking a
    protective order or seeking agreement from United.  Thus, Plaintiff's emails have already been improperly
26  redacted to remove what Plaintiff claims is irrelevant material, and Plaintiff's argument that the emails contain
    irrelevant information is contradicted by Plaintiff's own actions during document production.

DEFENDANT'S RESPONSES TO PLAINTIFF'S          DLA Piper US LLP
MOTIONS IN LIMINE - 10                        701 Fifth Avenue, Suite 7000
CASE NO. CV07-0682JCC                          Seattle, WA  98104-7044 | Tel: 206.839.4800

1   was in any way related to her sexual harassment complaints. Thus, these emails are crucial to

2   United's defense. Redacting all the "colorful" language from these emails would eliminate the

3   context and tone of Plaintiff's statements, making it difficult – if not impossible – for the jury

4   to properly evaluate Plaintiff's admissions.

5        In addition, these emails demonstrate that Plaintiff's communication style was indeed

6   combative, blunt, and, at times, offensive. This evidence is relevant to show that United was

7   justified in counseling Plaintiff for her inappropriate communication style, and further proves

8   that the counseling sessions with Plaintiff were for legitimate, non-discriminatory reasons.

9   Offered for these reasons, Plaintiff's emails are unique, probative evidence.

10       FRE 403 cannot support redaction of Plaintiff's swear words and off-color language.

11   Plaintiff's emails are not unfairly prejudicial; rather, Plaintiff's email verbiage demonstrates a

12   lack of tact in her communication skills and is highly probative of whether United's conduct in

13   counseling Plaintiff about her communication style was justified. Furthermore, the emails in

14   their entirety are critical to United's defense against Plaintiff's retaliation claim. This is

15   probative evidence of the highest order, which substantially outweighs any risk of unfair

16   prejudice.

17       The final sentence of Plaintiff's motion concerning her emails to Anne Denton appears

18   to have been mistakenly included, for it is wholly unrelated to her argument. Specifically,

19   Plaintiff writes: "Evidence as to the total number of United flights where no pornography was

20   reported is not relevant or material and should be excluded." (Pl. Motion, at 9:14-15.) Because

21   Plaintiff has not stated the basis for this one-sentence claim, and has not asked the Court to rule

22   on this issue in her proposed order, United will not address the issue here. Needless to say,

23   United strongly objects to this one-sentence argument, and notes that such evidence of the

24   absence of pornography is clearly relevant to demonstrate that the pornography was on an

25   infinitesimally small number of United flights such that United management did not have

26   constructive notice of the problem and such that the jury could easily and properly conclude

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 11
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1   that pornography was not pervasive.  *See Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir.

2   2001). ("[A]n employer cannot be held liable for misconduct of which it is unaware.").

3       **F.      Evidence Related to United's Financial Condition Is Relevant for Limited**
        **Purposes.**
4

5           Evidence of United's financial circumstances is relevant to the proper discount rate to

6   be applied to any front pay award Plaintiff may recover.  In calculating the discount rate to be

7   applied to such an award, it is essential to account for the difference between payments to be

8   expected from a safe investment (*e.g.*, a Treasury bond) as opposed to payments to be expected

9   from an employer in a financially precarious industry.  As explained by Dan Kasper, United's

10  damages expert:

11              Airlines are a risky industry.  A number of airlines, including United,
                Delta, Northwest and US Airways have all been forced to restructure
12              under Chapter 11 [bankruptcy]...  Consequently, there is some uncertainty
                surrounding the future wages United will pay, as well as the size and
13              scope of its network.

14              ***

15              [T]he use of a risk-free rate to discount obligations of an airline would
                essentially assume that the future income streams were guaranteed.
16              Clearly, such an assumption is incorrect given the past and possible future
                plight of the industry.
17

18  (Ex. E to Declaration of Vreeland in Support of Plaintiff's Motions *in Limine,* at pp. 13-14.)

19  *See also Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320, 327 (7th Cir. 1992)

20  (holding in an age discrimination case that "A computation of damages that ignores the

21  difference in risk between earnings in a volatile occupation and a judicial award of a lump sum

22  equal to the present value of those earnings is unsound.").   Therefore, this evidence is

23  admissible at trial.

24          The Court should also deny Plaintiff's motion *in limine* "F" because the category of

25  evidence Plaintiff seeks to exclude is vague and imprecise without the context of trial.  For

26  example, Plaintiff claims on one hand that United's financial status is directly relevant to

1    punitive damages and to the calculation of Plaintiff's potential future wages.  (Pl. Motion at

2    9:22-24.)  Yet, on the other hand, Plaintiff seeks to limit evidence concerning whether "the

3    economy is tough for the airline industry," which is an ambiguous category of evidence and

4    arguably could include evidence concerning United's financial status.    Under these

5    circumstances, the appropriate method to exclude any improper evidence is through objections

6    at trial and rulings thereon – when the context of the evidence and all facets of its admissibility

7    are concrete and not speculative.  Accordingly, the Court should deny Plaintiff's motion *in*

8    *limine*.

9            **G.    Plaintiff's Motion *In Limine* Regarding References to Absent Witnesses Is**
             **Premature.**
10

11           Plaintiff's motion *in limine* to exclude defense counsel's statements regarding Plaintiff's

12    decision to not call or present a witness is premature and overbroad.  Plaintiff fails to identify

13    which witnesses Plaintiff will not call.  In the absence of such crucial information, the Court

14    cannot make a determination of whether any inference against Plaintiff is appropriate.

15    Depending on the identity of the witness, United may be entitled to argue an adverse inference

16    against Plaintiff for Plaintiff's failure to call the witness.  *Underwriters Lab. Inc. v. N.L.R.B.*,

17    147 F.3d 1048, 1054 (9th Cir. 1998) ("When a party fails to call a witness who may reasonably

18    be assumed to be favorably disposed to the party, an adverse inference may be drawn regarding

19    any factual question on which the witness is likely to have knowledge.") (internal quotation

20    marks omitted).  Because Plaintiff has not identified which witnesses it will not call, it is not

21    possible for United (or the Court) to conduct the appropriate analysis to determine whether an

22    adverse inference may be properly drawn against Plaintiff.

23           Therefore, the appropriate method to exclude any statements by counsel concerning the

24    presentation of witnesses is through objections at trial and rulings thereon, when all pertinent

25    facts are known to the Court and the defendant.  The sole case cited by Plaintiff, *Carlos v.*

26    *Cain*, 4 Wn. App. 475, 479, 481 P.2d 945 (1971), is consistent with this approach.  In that case,

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 13
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   the Court of Appeals affirmed the trial court's decision to exclude statements by counsel based

2   on an objection made at trial, not presented as a motion *in limine*.   Thus, *Carlos* supports

3   United's argument, and Plaintiff's motion should be denied.

**H.   United and/or Plaintiff Disclosed Every Witness in Their Initial Disclosures, Supplements to Those Disclosures, or in Answers to Interrogatories, and There is No Basis to Exclude These Witnesses.**

6   Plaintiff argues that seven of Defendant's proposed trial witnesses should be excluded

7   because they were not previously disclosed.   This argument is frivolous and demonstrates that

8   Plaintiff did not bother to review Defendant's disclosures before wasting the Court's time with

9   this motion.

10   On June 30, 2008, Defendant timely served Plaintiff with Defendant's Supplemental

11   Disclosures.   (Harper Dec. ¶ 4.)   Defendant's Supplemental Disclosures listed potential

12   witnesses John Winter, Katherine Loveland, John Steiner, Ken Turpen, and Carl Klinkhammer.

13   (Harper Dec. ¶ 4.)   There can be no argument that these witnesses were disclosed and so cannot

14   be excluded.

15   With respect to the last two witnesses, Stephen Forte and Jacci Gooden, Plaintiff listed

16   both of them in her initial disclosures as "Persons Likely to Have Discoverable Information

17   Who May Be Used to Support Claims."   (Harper Dec. ¶ 2.)   It is wrong for Plaintiff to argue

18   that she did not have the opportunity to depose Stephen Forte and Jacci Gooden, when Plaintiff

19   herself identified the scope of the witnesses' knowledge and listed them as potential sources of

20   relevant information.   Plaintiff cannot now cry foul because she chose not to seek discoverable

21   information from witnesses she identified.

22   Moreover, Defendant's omission of the two witnesses was harmless.   Federal Rule of

23   Civil Procedure 37(c) excludes evidence at trial only if a failure to disclose is harmful.   Fed. R.

24   Civ. P. 37(c); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.

25   2001).   Here, Plaintiff had notice of, and opportunity to conduct discovery from, Stephen Forte

26   and Jacci Gooden because they were noted in her own disclosures as persons with relevant

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 14
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

information. The Advisory Committee Notes to Fed. R. Civ. P. 37(c) explicitly note that such circumstances are harmless and should not lead to the exclusion of witness testimony. Fed. R. Civ. P. 37(c), Adv. Comm. Notes (1993 Amend.) ("the exception for violations that are 'harmless' is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties."). Here, the inadvertent omission of Ms. Gooden and Mr. Forte is harmless, and they should not be excluded as witnesses at trial.

## I.  Defendant is Entitled to Assert Both the "Mixed Motive" Defense and the After-Acquired Evidence Defense.

Plaintiff contends that this Court should preclude United's "mixed motive" defense because Plaintiff did not have notice of this defense. Plaintiff's contention is inaccurate. In United's Answer, filed over a year ago, Defendant asserted as its Seventh Affirmative Defense that "any alleged actions or decision by United taken with respect to Plaintiff's employment were for legitimate, non-discriminatory reasons." (Dkt. No. 7). Thus, there can be no doubt that Plaintiff was on notice that United would counter her retaliation claim by submitting evidence that United made its employment decisions for legitimate reasons, *i.e.*, that Defendant would have made the same employment decisions regardless of Plaintiff's protected activity. *See Donovan v. Milk Mktg. Inc.*, 243 F.3d 584, 586-87 (2d Cir. 2001) (holding that defendants properly raised the mixed-motive defense to an ADEA claim when "the defendants expressly stated in their answer that their actions were motivated by 'legitimate, non-discriminatory reasons'").

Furthermore, United disclosed to Plaintiff during discovery the extensive testimony and documentary evidence supporting its defense that it acted for legitimate reasons, so Plaintiff is on notice of the evidence that United will present at trial. *Pulliam v. Tallapoosa County Jail*, 185 F.3d 1182, 1186 (11th Cir. 1999) (concluding that "Defendant's proof in asserting that Plaintiff was terminated for legitimate reasons is the same as the proof in asserting that

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 15
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   Defendant would have terminated Plaintiff even in the absence of discriminatory reasons"). In

2   its summary judgment brief, United again argued that it took any alleged adverse employment

3   action for legitimate, non-discriminatory reasons. (Docket No. 56, at 17-21.) Because Plaintiff

4   was on notice of United's "mixed motive" defense at the summary judgment stage, United may

5   assert it at trial. *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993). Therefore,

6   United properly raised the "mixed motive" defense and is entitled to present that defense at

7   trial.[6] *See* Fed. R. Civ. P. 8; *Arizona v. California*, 530 U.S. 392, 410 (2000).

8       Plaintiff cannot claim unfair prejudice or surprise. Defendant filed its Answer on

9   June 15, 2007. (Dkt. No. 7.) Plaintiff had over a year to conduct discovery on the "legitimate,

10  non-discriminatory reasons" for any purported employment actions taken by United. Indeed,

11  Plaintiff asserts she "conducted extensive discovery in this action in an effort to ascertain the

12  basis or bases for defendant's claim of non-liability." (Pl. Motion, at 12:14.) Plaintiff's

13  "extensive discovery" included discovery into the reasons for United's alleged adverse

14  employment actions, including three days of deposition testimony of Chief Pilot Patrick

15  Durgan and Acting Chief Pilot Ulrika Wallitner, during which Plaintiff's counsel asked

16  numerous questions directly concerning this issue. Plaintiff cannot now claim unfair surprise

17  when it was clear from the start "that Defendant's motives and Plaintiff's conduct would be in

18

19  [6] Plaintiff offers no authority to the contrary. Plaintiff's cited cases, *Stark v. Allis-Chalmers*, 2 Wash. App. 399,
    467 P.2d 854 (1970), and *Hampson v. Ramer*, 47 Wash. App. 806, 737 P.2d 298 (1987), are not remotely on point
20  and certainly do not bind a federal court. In *Stark*, the Washington Court of Appeals affirmed the trial court's
    denial of a plaintiff's admission of evidence of a curved bar on the hood of a tractor, where the plaintiff did not
21  mention the evidence in her complaint, amended complaint, or answers to interrogatories. 2 Wash. App. at 402.
    And in *Hampson*, the Court of Appeals affirmed a trial court's exclusion of carpal tunnel syndrome evidence as a
22  Rule 37 sanction, where the plaintiff underwent unannounced corrective surgery that prevented the defendant from
    conducting a pre-surgery medical exam of the plaintiff. 47 Wash. App. at 810-11. Plaintiff fails to explain how
23  carpal tunnel syndrome and curved bars on tractor hoods relate to the circumstances of the present case, where
    Plaintiff was clearly on notice of United's defense.

24     Furthermore, even if United had not raised the "mixed motive" defense in its Answer, during discovery, and
    during summary judgment briefing, United could still raise the defense in the pretrial order. *See Pulliam*, 185 F.3d
25  at 1185 (affirming a district court's conclusion that inclusion of the "mixed motive" defense in the pretrial order
    gave Plaintiff sufficient notice of the defense); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993)
26  (the final pretrial order supersedes the parties' pleadings).

DEFENDANT'S RESPONSES TO PLAINTIFF'S                    DLA Piper US LLP
MOTIONS IN LIMINE - 16                              701 Fifth Avenue, Suite 7000
CASE NO. CV07-0682JCC                          Seattle, WA 98104-7044 | Tel: 206.839.4800

1    issue." *Pulliam*, 185 F.3d at 1185; *Donovan*, 243 F.3d at 586-87.

2        Finally, contrary to Plaintiff's contention, United's "mixed motive" defense is

3    applicable to this case. According to Plaintiff, to prove the third element of retaliation she must

4    prove that "the protected activity was a motivating factor in the adverse employment action."

5    (Pl. Motion at 12:4.) This is a direct quote from Ninth Circuit model civil jury instruction 10.3.

6    However, Plaintiff ignores the next paragraph of that same jury instruction, which directs

7    courts to give the "mixed motive" defense:

8        If the plaintiff has proved all three of these elements, the plaintiff is entitled to
         your verdict, unless the defendant has proved by a preponderance of the
9        evidence that it would have made the same decision even if the plaintiff's
         participation in a protected activity had played no role in the employment
10       decision.

11   Ninth Cir. Civil Jury Instr. 10.3. The Ninth Circuit has held that when a court instructs the jury

12   on causation as Plaintiff has requested, a defendant is entitled to the "mixed motive" defense

13   instruction. *See, e.g., Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1564 (9th Cir. 1994). Plaintiff's

14   argument to the contrary should be rejected.[7]

15       **J.    The Court Should Deny Plaintiff's Amorphous Motion to Exclude
              Unspecified Evidence.**
16

17       Plaintiff prematurely moves this Court to exclude all documents that United did not

18   include in its discovery responses or initial disclosures, yet Plaintiff fails to identify any such

19   documents. The Court should deny Plaintiff's premature motion, and assess the admissibility

20

21   [7] With respect to United's after-acquired evidence affirmative defense, Plaintiff waived her claim that this defense
     is improper because Plaintiff failed to present any argument on the issue in her motion. Nowhere in Plaintiff's
22   Motion *in Limine* "I" does Plaintiff mention the after-acquired evidence defense – not in its heading, not in a
     footnote, and not in the body of the motion. Pl. Motion, at 11-12. The only hint of the after-acquired evidence
23   defense is in Plaintiff's proposed order. Because Plaintiff has utterly failed to present any basis for excluding this
     defense, Plaintiff has waived her argument that the after-acquired evidence defense should be excluded.
24
        Moreover, there can be no doubt that this defense is applicable to the facts of the case and that it was timely
25   disclosed by United in its Answer (Dkt. No. 7 at Fourteenth Affirmative Defense,), in discovery (Defendant's
     Second Supplemental Responses to Plaintiff's First Discovery Requests, Harper Dec. ¶ 3 ), and in its summary
26   judgment motion (Dkt. No. 56). A defendant may assert at trial affirmative defenses that it timely raises in its
     answer and discovery pleadings. *See* Fed. R. Civ. P. 8; *Camarillo*, 998 F.2d at 639.

1  of any specific documents at trial, if necessary.

2       In the absence of a particular document or piece of evidence, it is impossible for the

3  Court to make a determination of admissibility in a vacuum. "To exclude evidence on a motion

4  *in limine* 'the evidence must be inadmissible on all potential grounds.'" *Hays v. Clark County*

5  *Nev.*, No. 2:07-cv-01395-LDG-PAL, 2008 WL 2372295, *7 (D. Nev. June 6, 2008) (quoting

6  *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "Unless evidence

7  meets this high standard, evidentiary rulings should be deferred until trial so that questions of

8  foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne*

9  *Partners v. AT & T Tech, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Plaintiff fails to

10  identify a single document that United has not disclosed that United seeks to offer at trial. This

11  Court has no facts to review and no context to assess relevance or prejudice. Therefore,

12  Plaintiff's motion must be denied.

13       Moreover, even if any such documents did exist, exclusion is not automatically

14  mandated under Rule 37(c). Defendant must have the opportunity to show that its

15  nondisclosure was either harmless or substantially justified. Fed. R. Civ. P. 37(c); *Yeti*, 259

16  F.3d at 1106. Thus, this Court should deny Plaintiff's motion and address each individual

17  document that Plaintiff objects to, if any, at trial.

18      **K.**    **Defendant Should be Allowed to Present Evidence Relating to Plaintiff's**
19          **Financial Motivation.**

20       Plaintiff's financial motivation in seeking damages is relevant, probative evidence. At a

21  minimum, this type of evidence goes to Plaintiff's credibility. *See, e.g., Kinetic Concepts, Inc.*

22  *v. Bluesky Medical Corp.*, No. SA-03-CV-832-WRF, 2007 WL 1113088, *9 (W.D. Tex.

23  Apr. 4, 2007) ("[F]inancial wealth evidence is relevant to credibility.").

24       In this case, there is substantial evidence that Plaintiff planned to end her career as a

25  pilot to pursue her true passions – artwork and fiction writing. A reasonable jury could

26  conclude that Plaintiff's lawsuit is not the result of any damages she actually suffered due to

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 18
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1 her work for United, but rather is an attempt to obtain money so she can remain essentially

2 retired and pursue her artistic dreams while remaining financially secure.  A reasonable jury

3 could also conclude that Plaintiff has not been entirely forthcoming about her medical issues in

4 order to obtain long-term disability payments from United and her insurance company.  In light

5 of these facts and reasonable inferences, United is entitled to make arguments about Plaintiff's

6 financial motivations and to argue to the jury that any recovery of damages in this case would

7 constitute a windfall to Plaintiff.

8        Reference to terms such as "windfall," "easy street" and "gold digger" are not unfairly

9 prejudicial.  Courts regularly allow such terms to be used at trial.  *See, e.g., Monroe v.*

10 *Angelone,* 323 F.3d 286, 305 n.31 (4th Cir. 2003) (multiple witnesses testified at trial using the

11 words "gold digger"); *In re Lombardo,* 310 B.R. 819, 821 (Bkrtcy. S.D. Ohio 2003) (the

12 plaintiff presented evidence that bankrupt debtor viewed the plaintiff as a "gold digger").  The

13 probative worth of such evidence is not substantially outweighed by any risk of unfair

14 prejudice.  A jury must be able to evaluate Plaintiff's credibility based on all the evidence.

15 Accordingly, United should not be precluded from using terminology and making reasonable

16 arguments that are supported by the evidence presented at trial.

17        Plaintiff offers no substantive argument to the contrary.  She cites no authority and fails

18 to explain *how* such evidence is unfairly prejudicial.  Plaintiff also omits any discussion of how

19 the risk of unfair prejudice, if there is any, substantially outweighs the probative worth of

20 Plaintiff's financial motivation.  Plaintiff's motion should be denied.

21        **L.     Evidence Regarding Plaintiff's Duty to Mitigate Damages Is Relevant.**

22        Plaintiff seeks to exclude an uncertain category of evidence regarding Plaintiff's failure

23 to obtain "entry level, minimum wage" employment to mitigate her damages after her medical

24 grounding.  (Pl. Motion at 14:3-6.)  In general, United does not contest this motion because

25 United does not intend to argue that Plaintiff should have obtained such low-level employment.

26 Rather, United will present evidence at trial that Plaintiff should have obtained alternative

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 19
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   employment consistent with her talents, abilities and geographic location.

2       However, because Plaintiff's proposed order seeks to exclude an amorphous category of

3   evidence relating to "jobs which would not comply with the mitigation legal standards under

4   federal or state employment law," Plaintiff's motion should be denied because it would not

5   provide the parties with any guidance as to what is and is not admissible.  In the absence of

6   Plaintiff's motion *in limine*, United would be constrained to offer evidence that was legally

7   relevant under federal or state employment law.  Plaintiff's motion *in limine* and proposed

8   order do nothing to clarify this standard.   Therefore, Plaintiff's motion is nothing but a

9   reiteration of the legal standard and should be denied as providing no guidance.

10      **M.      Daniel Kasper's Expert Opinions are Supported by His Qualifications, His
             Analysis, and His Research, and There is No Basis to Exclude His Initial
11            Expert Report or His Rebuttal Report.**

12      In a three-paragraph motion devoid of substance, analysis, or legal citations, Plaintiff

13   seeks to exclude certain unidentified expert opinions presented in Mr. Kasper's September 2,

14   2008 Expert Report ("Initial Report") and in his October 2, 2008 Rebuttal Report ("Rebuttal

15   Report").  (Pl. Motion at 14:16-22.)  Tellingly, Plaintiff does not identify a single expert

16   opinion of Mr. Kasper that should be excluded from trial, nor does Plaintiff cite any legal

17   authority to support her barebones argument.  Plaintiff does not even specify which federal rule

18   would theoretically preclude Mr. Kasper's expert opinion.  Accordingly, Plaintiff has failed to

19   present a viable motion *in limine*, and her motion should be denied.

20      Plaintiff's inability to mount a substantial motion is not surprising considering

21   Mr. Kasper's unassailable qualifications and the thorough nature of his expert reports.

22   Mr. Kasper has spent decades addressing financial and economic issues (including damages

23   calculations) related to the airline industry.  (Ex. E to Vreeland Dec. at pp. 1-2.)  He has applied

24   his economic expertise regarding the airline and transportation industries while conducting

25   work for the U.S. Civil Aeronautics Board, while serving as one of 15 appointed members of

26   the U.S. National Airline Commission, and as a consultant to the U.S. Departments of

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 20
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    Transportation, State, and Defense. *Id.* Mr. Kasper has testified as an expert on airline and
2    aviation industry matters on numerous occasions before courts, federal administrative agencies,
3    legislative bodies, and antitrust authorities, both in the United States and abroad. *Id.* In
4    addition, he has authored two books on aviation as well as numerous articles, case studies and
5    research papers on various aspects of air transportation and government policy. *Id.* He
6    previously served on the faculties of Harvard Business School and the University of Southern
7    California School of Business Administration for ten years. *Id.* Based on these qualifications,
8    which are set out in further detail in Mr. Kasper's expert report and curriculum vitae, Plaintiff's
9    fleeting complaint about Mr. Kasper's "qualifications" cannot be taken seriously.

10          Moreover, Mr. Kasper's expert reports set forth fully and plainly his methodology, his
11   opinions, and the bases for these opinions. As noted above, Plaintiff does not identify a single
12   example to support her unsupported claim that Mr. Kasper's opinions "are not concrete." Even
13   a cursory review of Mr. Kasper's expert reports demonstrate that Plaintiff's claim is frivolous.
14   To provide but one example, Mr. Kasper devotes three pages of his report to calculating the
15   proper discount rate to be applied to Plaintiff's potential future damages and explains all of the
16   bases for his calculations. (Ex. E to Vreeland Dec. at p. 12-14.) Plaintiff's expert, on the other
17   hand, presents but a single paragraph to calculate the discount rate, with almost no explanation
18   regarding the reasonableness of his calculations or assumptions. There can be no doubt that
19   Mr. Kasper's methodology is sound, as it is based on a fundamental precept of economics and
20   finance: discounting future income streams to the present value based on an appropriate
21   discount rate. Courts routinely admit such expert testimony. Indeed, Plaintiff's own economic
22   expert (Dr. DeKay) employed the same methodology in estimating damages.

23          Mr. Kasper's Rebuttal Report is similarly thorough in its explanations of methodology
24   and in presenting the bases for Mr. Kasper's opinions. (Harper Dec. ¶ 5.) Mr. Kasper provides
25   detailed explanations concerning the number of hours that Plaintiff could have been expected to
26   work as a pilot, the potential increases in Plaintiff's salary, and the calculation of offsetting and

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 21
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   mitigating damages, among other issues. *Id.* In addition, Mr. Kasper explains the foundations

2   for his opinions much more thoroughly than Plaintiff's damages expert, who has almost no

3   experience in the airline industry and made assumptions often without any support.

4       Finally, Plaintiff has no basis for complaining about opinions Mr. Kasper provided in

5   his Initial Report as opposed to his Rebuttal Report. Plaintiff admits that both the Initial Report

6   and Rebuttal Report were timely served on Plaintiff in accordance with the Court's expert

7   discovery deadlines and Rule 26(a)(2). Moreover, it is Plaintiff's burden to establish and prove

8   damages. Mr. Kasper need not have provided an Initial Report at all, but could have simply

9   rebutted the expert report provided by Plaintiff's damages expert. Fed. R. Civ. P. 26(a)(2).

10   Here, Mr. Kasper did more – he provided the methodology of his damages calculation, his

11   opinion concerning mitigating damages, and his calculation of the discount rate to Plaintiff in

12   his Initial Report, and then supplemented this information in his Rebuttal Report to rebut the

13   errors, improper assumptions, and gross overestimation of damages provided by Dr. DeKay,

14   Plaintiff's damages expert. (Harper Dec. ¶ 5). Mr. Kasper's expert disclosures were entirely

15   consistent with Rule 26(a)(2) and all local rules. Indeed, Plaintiff cites no legal authority to

16   support her contention that certain opinions were required to be made in the Initial Report.

17   **N.   Evidence Related to Events That May Have Caused Plaintiff's Damages
18       Should Not Be Excluded.**

19       Plaintiff argues that evidence related to Plaintiff's "childhood events" and life history

20   should be excluded as non-probative and prejudicial. Yet Plaintiff tacitly admits in her motion

21   that such evidence is relevant to the causal connection between (a) the pornographic material

22   on the flight deck, and (b) Plaintiff's diagnosed condition and treatment. (Pl. Motion at 16:6-

23   8.) This issue of causation – which will be a key issue for the jury to determine at trial –

24   mandates that evidence of Plaintiff's life history be admissible at trial.

25       Plaintiff's motion does not explain why the evidence of traumatic events in Plaintiff's

26   life is not relevant to causation. Instead, the motion does nothing more than present Plaintiff's

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 22
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1   argument on causation, which United should have an opportunity to rebut with evidence at trial.

2   In short, Plaintiff argues that Plaintiff's prior traumatic life events did not cause her medical

3   grounding in 2005 because Plaintiff had been able to hold a job as a pilot for United prior to

4   2005. This argument is not only unpersuasive, but it utterly fails to justify why United should

5   be precluded from offering an alternate explanation. United will seek to introduce evidence at

6   trial that Plaintiff suffered from longstanding medical conditions that led to her previous

7   grounding in the aftermath of 9/11 and which Plaintiff was finally unable to control in mid-

8   2005. There is ample evidence to support this explanation, including Plaintiff's statements to

9   United that she had suffered from a "lifelong history of recurring" medical problems. (Ex. Y to

10   Defendant's Motion for Summary Judgment, Dkt. 43 (filed under seal).) Plaintiff also made

11   similar statements to her physicians, including one admission to her therapist that Plaintiff's

12   medical condition was "barely held in check" when she returned to flying after 9/11 (and

13   before she viewed pornography in June 2004). Therefore, United should be able to present

14   evidence that Plaintiff's medical condition was caused by events in her life that preceded the

15   pornography.

16       Moreover, the introduction of evidence of traumatic events in Plaintiff's life is crucial to

17   United's ability to adequately challenge the testimony of Plaintiff's purported psychological

18   expert, Dr. Feldman-Summers. Dr. Feldman-Summers opines that Plaintiff's medical condition

19   in 2005 was not caused by other stressful events in Plaintiff's background. To the contrary,

20   United's psychological expert (Dr. Rosen) provides the rebuttal opinion that "Ms. Stout has

21   claimed that she has had significant [medical] problems throughout her life." (Ex. F to

22   Vreeland Dec. at 17 (filed under seal). The jury should be allowed to resolve this dispute with

23   all of the evidence concerning Plaintiff's background and life experiences. To exclude plainly

24   relevant evidence of Plaintiff's life history would leave the jury with a constricted and distorted

25   view of the evidence.

26       In sum, the evidence of Plaintiff's life events is directly probative of whether the

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 23
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1    pornography on the flight deck caused Plaintiff's medical grounding or her alleged emotional

2    distress.    It is axiomatic that Plaintiff must establish a causal link between pornographic

3    material on the flight deck and her damages claims. *Coral Const. Co. v. King County*, 941 F.2d

4    910, 926 (9th Cir. 1991) ("[S]ection 1981 is by nature a tort remedy. Accordingly, it follows

5    that causation is also an element of a section 1981 cause of action.") (citations omitted);

6    *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (causation is part of a prima facie Title

7    VII case).    Here, a reasonable jury could conclude there is no causal connection because,

8    considering the series of truly traumatic events that Plaintiff suffered over the course of her life

9    (childhood sexual molestation; parental kidnapping; spousal abuse; and the death of colleagues

10   on 9/11), it is inconsistent with the evidence and common sense for Plaintiff to claim that

11   pornographic images that she unearthed on the flight deck are responsible for her mental

12   distress.    Rather, there is substantial evidence that Plaintiff long suffered from medical

13   conditions, that she experienced a decline over a period of many years, and that she would have

14   faced her disability regardless of any pornography she encountered. *See Griffith v. City of Des*

15   *Moines*, 387 F.3d 733, 746 (8th Cir. 2004) ("Title VII is not designed to provide a windfall to

16   [Plaintiff], but rather serves to put the [Plaintiff] in the same position ... she would have been

17   in absent discrimination.").    Thus, the evidence is directly relevant to the causation of

18   Plaintiff's damages.

19        FRE 403 is not a basis to exclude the evidence.  This evidence is crucial to United's

20   damages causation arguments and to United's ability to rebut Plaintiff's psychological expert.

21   Any potential prejudice to Plaintiff – which Plaintiff fails to explain – cannot outweigh the

22   substantial probative value of this evidence.    Moreover, because Plaintiff has placed this

23   evidence at issue by claiming emotional distress and providing expert testimony on the issue of

24   distress, Plaintiff cannot now claim that such evidence would "confuse the jury" and seek to

25   exclude evidence of the potential causes of the distress. Exclusion of this evidence would

26   severely and improperly circumscribe United's ability to defend itself. The Court should deny

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 24
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  Plaintiff's motion *in limine*.

2      **O.    Dr. Rosen's Expert Report Provides Proper Rebuttal Opinions and the**
       **Bases for These Opinions, and There is No Legitimate Basis to Exclude His**
3      **Testimony.**

4          Plaintiff asserts that Dr. Rosen's expert report is "not adequate" because it does not

5  contain any "opinion of diagnosis, prognosis, or psychological or mental condition" and it does

6  not provide the bases for Dr. Rosen's opinions.  (Pl. Motion at 16:20-22; 17:6.)  However,

7  Plaintiff does not provide a single concrete example of how Dr. Rosen's expert report is

8  deficient in any way.  Similar to Plaintiff's threadbare motion concerning Mr. Kasper's expert

9  report (Motion *in Limine* "M"), Plaintiff does not cite any legal authority to support her

10 argument, nor does Plaintiff bother to identify what federal rule or law would theoretically

11 preclude Mr. Rosen's expert opinion.  Plaintiff has again failed to present a viable motion *in*

12 *limine*, and her motion should be denied.

13         Plaintiff's claim that Dr. Rosen's Rebuttal Report "does not offer any opinion of

14 diagnosis, prognosis, or psychological or mental condition" reflects a misunderstanding of the

15 role of Dr. Rosen as a rebuttal expert.  Dr. Rosen provided his expert report in rebuttal to the

16 report of Dr. Feldman-Summers, Plaintiff's purported psychological expert.    Therefore,

17 Dr. Rosen's report served to "contradict [and] rebut evidence in the same subject matter

18 identified by" Dr. Feldman-Summers. Fed. R. Civ. P. 26(a)(2).  Accordingly, it was entirely

19 appropriate for Dr. Rosen to "make[] statements of disagreement with several of the opinions

20 of plaintiff's expert," as Plaintiff admits that Dr. Rosen did.   (Pl. Motion at 16:21-22.)

21 Dr. Rosen was not required to make any specific diagnosis in order to render his opinion

22 admissible at trial, and Plaintiff has not cited any authority to the contrary.

23         Furthermore, Dr. Rosen clearly presented the detailed foundations for each of his

24 rebuttal opinions.  (Ex. F to Vreeland Dec. (filed under seal).  Plaintiff does not cite any

25 example of where Dr. Rosen failed to set forth the bases for his rebuttal opinion, and a review

26 of Dr. Rosen's report demonstrates that Plaintiff's motion is groundless.  For example, on page

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   seventeen of the Rebuttal Report, Dr. Rosen opines that, "[r]ecords indicate that Ms. Stout

2   likely had ambivalent, if not outright negative feelings toward her job, and other career

3   identities were foremost in her mind." (Ex. F to Vreeland Dec. at 17.)   In two extensive

4   footnotes, Dr. Rosen cites and quotes the documentary evidence supporting this rebuttal

5   opinion, including one of Plaintiff's own emails and two of Plaintiff's publications. *Id.* at

6   nn.14-15.   There can be no doubt that the foundation for this opinion is clearly set forth.

7   Similarly, Dr. Rosen opines in his report that "Ms. Stout may have had feelings of annoyance

8   and frustration in response to pornographic stimuli found on flight decks but she did not

9   develop ... symptoms from these exposures." (Ex. F to Vreeland Dec. at 17.)   Again, Dr.

10   Rosen uses a detailed footnote to identify the support for his opinion. *Id.* at n.16.

11        Dr. Rosen's nineteen-page report is replete with footnote references, citations to

12   specific documents and testamentary evidence, and analysis of the documents, publications,

13   and medical records that Dr. Rosen reviewed. (*See, e.g.,* Ex. F to Vreeland Dec., at 17 n.14, 18

14   n.20, & 19 nn.21-23.    Dr. Rosen's Rebuttal Report clearly satisfies the admissibility

15   requirements of the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

16   Plaintiff's motion *in limine* should be denied.

17        Respectfully submitted this 17th day of November, 2008.

18

19                          */s/ Tyson K. Harper*

20                          Tyson K. Harper, WSBA No. 39720
                           Stellman Keehnel, WSBA No. 9309

21                          Kit W. Roth, WSBA No. 33059
                           DLA Piper US LLP

22                          701 Fifth Ave., Ste. 7000
                           Seattle, WA 98104

23                          Phone: 206.839.4800
                           Fax: 206.839.4801

24                          e-mail: Tyson.harper@dlapiper.com

25                          Attorneys for Defendant United Air Lines

26

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 26
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1

## CERTIFICATE OF SERVICE

2

   I hereby certify that on November 17, 2008, I electronically filed the foregoing

3

Defendant's Responses to Plaintiff's Motions in Limine with the Clerk of the Court using the

4

CM/ECF System which will send notification of such filing to the following:

5
                    Victoria L. Vreeland
                    GORDON, THOMAS, HONEYWELL, MALANCA,
6
                    PETERSON & DAHEIM LLP
                    600 University Street, Suite 2100
7
                    Seattle, Washington  98101
                    Ph: (206) 676-7500
8
                    Fx: (206) 676-7575
                    E-mail: vvreeland@gth-law.com
9
                    Attorney for Plaintiffs

10

11
     Dated at Seattle, Washington, this 17th day of November, 2008.

12
                  DLA PIPER US LLP

13

14
                  *s/ Tyson K. Harper*
                  Tyson K. Harper, WSBA No. 39720

15

16

17
WEST\21594862.1

18

19

20

21

22

23

24

25

26

DEFENDANT'S RESPONSES TO PLAINTIFF'S
MOTIONS IN LIMINE - 27
CASE NO. CV07-0682JCC

DLA Piper US LLP
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800